STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ALFRED RAVENELL, DEFENDANT-APPELLANT.

Argued June 1 and June 2, 1964—Decided July 31, 1964.

*Mr. Calvin J. Hurd* argued the cause for appellant (*Mr. Alfred M. Wolin,* of counsel).

*Mr. S. David Levy,* Assistant Prosecutor, argued the cause for respondent (*Mr. H. Douglas Stine,* Union County Prosecutor, attorney).

The opinion of the court was delivered by

JACOBS, J. The defendant Alfred Ravenell was found guilty of murder in the first degree with recommendation of life imprisonment on both counts of the indictment against him. He was sentenced to consecutive terms of life imprisonment and he appealed to this Court as of right. *R. R.* 1:2–1(c).

On April 18, 1962 Bernard Warset, the proprietor of Lee's Liquor Store on Jefferson Avenue in Elizabeth, and John E. Polansky, a customer in the store, were murdered. Thereafter the Union County Grand Jury returned an indictment charging defendants Alfred Ravenell and Wallace Solomon Odom with having committed the murders in violation of *N. J. S.* 2A:113–1. In due course the defendants were brought to trial and the State produced proof in support of its assertion that the defendants had murdered Warset and Polansky in the course of a robbery at the liquor store. At the outset of the trial, counsel for both defendants stipulated that "Bernard

Warset and John E. Polansky died on April 18, 1962, between 7:30 P. M. and 8:10 P. M. at Lee's Liquor Store at Jefferson Avenue in Elizabeth, New Jersey as the result of bullet wounds unlawfully and not self-inflicted upon them."

The State's first witness was Barbara Jean Jeter who testified that she knew both Ravenell and Odom and that she was with them and M. C. Jackson on June 20, 1962 at the Arthur Kill (Elizabeth River) when the following conversation took place: "Al Ravenell said that they killed a man, the liquor store on Jefferson Avenue. I asked him when did that happen. He said a little bit before Easter, just before Easter. I asked him why. He said they needed money very badly. And Sol said while they was there that a customer came in and he begged them don't take his life, he wouldn't recognize them, but they killed him anyway." Easter Sunday in 1962 fell on April 22, just four days after the murder.

Mrs. Sylvia Warset, the widow of Bernard Warset, testified that at or about 8:00 P. M. on April 18 she entered the store and found her husband lying face down on the floor. The cash register was wide open and there were "no bills in the register at all, just some change." Earlier in the day she had observed that there was a little over a hundred dollars in the register and its tape indicated that the receipts for the entire day amounted to one hundred and fifty-three dollars and change. Officer Hennings of the Elizabeth police department testified that he entered the store about 8:12 P. M.; he saw Mr. Warset's body behind the counter and later saw the second body in the rear of the store; and he found the cash register empty except for some nickels and pennies.

King Junious testified that he knew Odom and also knew where Lee's Liquor Store was located; on April 18 he met Odom at about 7:30 P. M. at a tavern known as the Cotton Top; Odom asked him for a ride and he then drove Odom and a man he could not identify to a point about a half block from the liquor store. Jose Panarra testified that on April 18 at about 8:00 P. M. he and his wife Maria went to the liquor store. They made their purchase and as they were leaving

they saw Odom enter. Maria corroborated her husband and testified that Odom later identified them as the teen-agers who were leaving the store as he entered.

Stephen Alusik testified that at about 8:00 P. M. on April 18 he had his son in a stroller and was traveling towards the liquor store. When he was about 20 or 30 feet from the entrance, he saw a man heading from the liquor store towards Magnolia Avenue. Odom later identified himself as that man. Alusik continued towards the store and saw a man inside with a gun in his right hand. He heard two shots and saw a man fall to the floor at the rear. The gunman, wearing a black jacket, left the store and Alusik saw him put his gun in his pocket and head away from Magnolia Avenue.

On July 22, 1962 Odom gave a statement to the police and, after hearing testimony from Detective Martel and Lieutenant McGlynn of the Union County Prosecutor's Office and from Detectives Schlauch and Lynes of the Elizabeth police department, the trial court found it to have been made voluntarily. The court expunged references in the statement to Ravenell and admitted it with appropriate limiting instructions. See *State v. Rios,* 17 *N. J.* 572, 585 (1955); *State v. Tassiello,* 39 *N. J.* 282, 296–297 (1963); *State v. Hall,* 55 *N. J. Super.* 441, 451 (*App. Div.* 1959). Odom's statement in its expunged form gave substantially the following story: He and another man were driven by King to the corner at Magnolia and Jefferson Avenues early in the evening of the 18th. After King drove off, they stood at the corner for about ten minutes and then walked across the street to Lee's Liquor Store to get some wine. While in the store Odom heard the other man say "give me your money" and then saw a gun in his hand. At that point a customer came into the store, Odom went out and, as he was leaving, he heard two reports which sounded like shots and then heard two more such reports. Odom acknowledged that when they originally arrived at Magnolia and Jefferson Avenues, the man with him had shown him his gun and had said he needed some money and at that point Odom said "I did too." After they had left the liquor store, Odom met the

other man and was handed $15 with the comment "Here is half. That is all there was." Toward the latter part of the statement Odom was asked whether he had not really seen the shooting. He then changed his earlier version and said that while he was in the store he saw the owner shot though he was on his hands and knees begging not to be shot.

John P. Brady, a chemist and toxicologist, was qualified by the State as an expert witness. He testified from an examination of their clothing as to the distances the victims were from the fatal weapon when shot. Sergeant August O. Hoppe of the New Jersey State Police was qualified as an expert and testified that the four bullets removed from the bodies of the victims came from the same weapon. At the close of his testimony, the State rested and the defendants moved for acquittal. The motions were denied on the ground that, at that stage, the State was entitled to the benefit of all of its testimony and the favorable inferences which a jury might reasonably draw therefrom and that, thus viewed, it was sufficient to withstand the motions. See *State v. Fiorello,* 36 *N. J.* 80, 86–91 (1961), *cert.* denied 368 *U. S.* 967, 82 *S. Ct.* 439, 7 *L. Ed. 2d* 396 (1962). The trial court also expressed the view that the requirement of corroboration, as broadly formulated in *State v. Lucas,* 30 *N. J.* 37 (1959), was adequately met by the State. After the denials of the motions for acquittal, the defendant Ravenell moved for severance but the court, after pointing out that it had carefully limited Odom's statement, held that in the exercise of the discretion afforded to it by law severance should be denied. See *State v. Rios, supra; State v. Tassiello, supra; State v. Hall, supra.*

Odom presented evidence from several witnesses and then testified on his own behalf. He was cross-examined by counsel for Ravenell as well as counsel for the State. He testified that during the evening of April 18 he and Ravenell, who was wearing a black jacket and carrying a gun, were driven by King to the Plaza (at Magnolia and Jefferson Avenues); Ravenell said something to him about needing money, he replied he had only a dollar and was going to buy a bottle,

and they then went into Lee's Liquor Store; he heard someone say "your money" and then saw Ravenell with the gun in his hand; Ravenell told the owner to get away from the cash register and at that point a customer came in and walked to the back of the store; Odom then started backing out of the store and as he stepped out he heard two shots and saw a man's hand "fall out from the counter" and while outside the store he heard two more shots and then started running; he went home and later that evening went with his sister to the Nile Restaurant and there met Ravenell who put $15 in his pocket saying, "Here, take this. This is half." Odom's sister corroborated his testimony that they were in the restaurant and that they were met by Ravenell; she said she saw Ravenell put something in her brother's pocket but "couldn't see what it was" and although her brother and Ravenell had some conversation she "couldn't hear too clearly."

Ravenell testified on his own behalf, denying Odom's testimony as to the shooting of Warset and Polansky on April 18 as well as Barbara's testimony that he was at the Arthur Kill on June 20. M. C. Jackson testified in denial of the conversation referred to by Barbara and several other witnesses testified in aid of Ravenell's attack on Barbara's credibility. Ravenell also said that during the evening of April 18 he was in a bar known as the Welcome Inn when he heard somebody mention that a man had been killed uptown in a liquor store; later he went to the Nile Restaurant where he saw Odom alone; he said hello to Odom but did not give him any money or anything else. At the close of all of the testimony on behalf of the defendants as well as the State, no further motions were made. The jury was instructed after counsel had made their summations and after due deliberation it returned verdicts of guilty of murder in the first degree with recommendation of life imprisonment against both defendants Ravenell and Odom. Odom did not appeal but Ravenell did and, although he does not argue that his conviction was against the weight of the evidence, he does present various points of alleged error.

He advances three points which relate to proceedings before the trial began. The first asserts that he was deprived of due process by being denied "a preliminary hearing and the opportunity to obtain counsel until after arraignment." Ravenell appeared in the municipal court on July 23, 1962 and a preliminary hearing was adjourned until August 9 to afford him an opportunity to retain counsel. On July 24 the Union County Grand Jury returned the murder indictment against him and on July 31 he was brought before a county judge and a not guilty plea was entered on his behalf. At that time he stated that he would obtain his own counsel and the matter was continued until August 9 when he was brought before another county judge. This time he stated that he did not intend to obtain counsel and requested that counsel be assigned to him. That was done by order dated August 21. There was no preliminary hearing in the municipal court but its omission did not impair any of Ravenell's constitutional rights. The point was specifically dealt with in the case of *State v. Jackson and Ravenell,* 43 *N. J.* 148 (1964), decided this day, and need not be elaborated here. The fact that a plea of not guilty was entered prior to the August 21 order did not prejudice him for all defenses and protective steps remained available to him; *R. R.* 3:5–5(b)(3) would not be construed by us as vesting any contrary authority in the trial court where, as here, the plea was entered for record purposes while awaiting the defendant's selection or the court's appointment of counsel. See *Dean v. Maxwell,* 174 *Ohio St.* 193, 187 *N. E. 2d* 884, *cert.* denied 374 *U. S.* 839, 83 *S. Ct.* 1890, 10 *L. Ed. 2d* 1060 (1963); *People v. Combs,* 19 *A. D. 2d* 639, 241 *N. Y. S. 2d* 104 (1963). In fact, Ravenell's counsel was unrestricted in the taking of whatever preliminary and trial steps he deemed advisable and the trial was not brought on for over nine months after the order assigning him was entered. Neither his brief nor oral argument contained any suggestion of unfairness or prejudice in this regard. We reject the defendant's first point for the stated rea-

sons and on the basis of the supportive authorities cited here and in *State v. Jackson and Ravenell, supra.*

Under his second point the defendant attacks the manner in which his request for bail was dealt with below. Originally he applied for bail in *State v. Jackson and Ravenell* (Indictment No. 387) as well as in this case (Indictment No. 386). Bail was denied in the *Jackson and Ravenell* case, it proceeded to trial, and verdicts were returned on April 11, 1963. On April 30, counsel for Ravenell advised the Union County Clerk that no action had been taken on his motion for bail addressed to Indictment No. 386 and requested that the clerk list a new motion for bail for hearing on May 10. The State opposed this motion on the ground that Ravenell had no standing to make it in view of his conviction under Indictment No. 387. After hearing, the trial court entered an order dated May 16 continuing the defendant's motion for bail. Since the defendant was confined pursuant to his conviction under Indictment No. 387, he could not, under *R. R.* 1:4–4, have obtained bail pending his appeal in that proceeding. That circumstance alone would call for denial of the motion for bail here; in addition, the nature of the State's case would independently support a denial of bail within the procedures and principles set forth in *State v. Konigsberg,* 33 *N. J.* 367 (1960). No appellate review was sought before trial and at oral argument counsel for Ravenell conceded that after trial the denial of bail by itself was insufficient basis for reversal of the conviction. We hold the same view. See *Corbett v. People, Colo.,* 387 *P. 2d* 409, 418–419 (1963); *State v. Sheppard,* 100 *Ohio App.* 345, 128 *N. E. 2d* 471, 478 (1955), aff'd 165 *Ohio St.* 293, 135 *N. E. 2d* 340, *cert.* denied 352 *U. S.* 910, 77 *S. Ct.* 118, 1 *L. Ed. 2d* 119 (1956); *Hewitt v. United States,* 110 *F. 2d* 1, 6 (8 *Cir.*), *cert.* denied, 310 *U. S.* 641, 60 *S. Ct.* 1089, 84 *L. Ed.* 1409 (1940).

Under his third point the defendant urges that his motion for change of venue or foreign jury should have been granted. In *State v. Wise,* 19 *N. J.* 59 (1955), we pointed

out that such motion is addressed to the discretion of the trial court and is governed by the following:

"The test is whether an impartial jury could be obtained from among the citizens of the county or whether they are so aroused that they would not be qualified to sit as a jury to try the case. The evidence submitted, to be controlling, must be clear and convincing proof that a fair and impartial trial cannot be had before a jury of the county in which the indictment was found. *State v. Overton*, 85 *N. J. L.* 287 (*E. & A.* 1913); *State v. Lynch*, 103 *N. J. L.* 64 (*E. & A.* 1926); *In re Kelsey*, 127 *N. J. L.* 568 (*Sup. Ct.* 1942); *State v. Collins*, 2 *N. J.* 406 (1949); *State v. Cooper*, 10 *N. J.* 532 (1952)." 19 *N. J.*, at *p.* 73–74.

We find nothing in the record before us which would warrant disturbance of the lower court's exercise of its discretion in denying the defendant's motion. No attack is made on the qualification of any of the jurors selected. No complaint is made that any juror was sworn above the defendant's objection and no complaint is made about the latitude afforded on the *voir dire*. The recommendation of life imprisonment tends to negate any suggestion of a situation so inflamed as to impair the defendant's opportunity for a fair and impartial trial. The results of the so-called public opinion survey which the defendant submitted were entirely impersuasive. Only 121 persons, in a county with a population of over half a million, were interrogated and 59 of them declined to make any comment. In no sense could this be said to constitute proof, within the standards set forth in *Wise*, that a fair and impartial trial could not be had before a Union County jury.

Under his fourth point the defendant contends that the testimony of Barbara Jeter was improperly submitted to the jury. He attacks her story as to the admission of the murder as ambiguous and incredible and points out that it was not accompanied by independent proof from the State that his alleged statement was voluntary. The purport of her testimony and her credibility were clearly matters for the jury. See *State v. Landeros*, 20 *N. J.* 76, 84 (1955); *State v. Walker*, 37 *N. J.* 208, 219, *cert.* denied 371 *U. S.* 850, 83 *S.*

*Ct.* 89, 9 *L. Ed. 2d* 86 (1962). The supposed ambiguity relates to the fact that her testimony that Ravenell said they killed a man did not particularize who was meant by "they." But the jury could readily and properly infer from the entire statement and the attendant circumstances that the defendant had referred to Odom and himself. We find no substance to the question raised as to the voluntariness of the statement. The defendant was not then in the custody of police or the subject of a pending charge; he was in the company of friends when he made the statement to a friend. Unlike the cases relied upon by the defendant, which require an affirmative showing by the State of voluntariness where it seeks admission of a confession made by the defendant while in custody (see, *e. g., State v. Tassiello, supra,* 39 *N. J.* 282) there was no suggestion or danger of coercion or imposition, and a requirement here of independent affirmative proof by the State of voluntariness would have little support in reason. See *Lowman v. State,* 38 *Ala. App.* 612, 91 *So. 2d* 697, 699, *cert.* denied 265 *Ala.* 698, 91 *So. 2d* 700 (1956).

The later points in the defendant's brief include attacks on the testimony by the State's experts (Brady and Hoppe), the reception of Odom's statement during the State's case, and the trial court's refusal to grant a severance. The sufficiency of the qualifications of the experts was primarily a matter for the trial court's discretion and will be reviewed only for manifest error and injustice. See *Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358, 411 (1960); *McCormick, Evidence, pp.* 28–29 (1954). There was no such error or injustice here. Mr. Brady was eminently qualified as a chemist and toxicologist and Sergeant Hoppe had considerable training and experience in the field of firearms identification. Their testimony did not go beyond their respective fields and any weakening through cross-examination, as suggested by the defendant, was a matter for the jury which received proper instructions on the subject from the trial court. See *State v. Bertone,* 39 *N. J.* 356, 367–368, *cert.* denied 375 *U. S.* 853, 84 *S. Ct.* 113, 11 *L. Ed. 2d* 80 (1963).

During the State's case, and preparatory to its tender of Odom's statement in evidence, it produced witnesses who testified before the jury as to its voluntariness; this course was discretionary with the trial court. See *State v. Tassiello, supra,* 39 *N. J.*, at *p.* 291; *State v. Walker,* 33 *N. J.* 580, 592 (1960). After their examination by counsel for the State and cross-examination by Odom's counsel, the latter objected to the admission of the statement but his objection was overruled. The trial court made appropriate findings and admitted the statement into evidence as against Odom. Thereafter counsel for Ravenell requested leave to examine the State's witnesses out of the presence of the jury. This was denied by the trial court which pointed out that Odom's inculpatory statement was being admitted solely as against him, that all references to Ravenell were being deleted, and that suitable and timely limiting instructions were being given to the jury—all in accordance with the principles expressed in *State v. Tassiello, supra,* 39 *N. J.*, at *pp.* 296–297, *State v. Murray,* 33 *N. J.* 393, 397 (1960), and *State v. Rios, supra,* 17 *N. J.*, at *p.* 585.

In further support of its denial, the trial court noted that no objection had been voiced to the examination of the witnesses in the presence of the jury, that Odom had received proper representation from his counsel on any issues relating to the admissibility of the statement, and that Ravenell had no legal standing to attack the voluntariness of the statement which was being carefully confined and received as evidence against Odom alone. *Cf. Goldstein v. United States,* 316 *U. S.* 114, 62 *S. Ct.* 1000, 86 *L. Ed.* 1312 (1942); *Forrester v. State,* 224 *Md.* 337, 167 *A. 2d* 878, 881 (1961). We find no error in the trial court's handling of the matter and are satisfied that no prejudice resulted to Ravenell. Before the case was submitted to the jury, Odom had testified on his own behalf, had been cross-examined by Ravenell's counsel as well as by counsel for the State, and had not only substantially supported his statement but had supplied the excisions identifying Ravenell as the participant in the murder. As far

as Ravenell was concerned, the jury undoubtedly relied not on the statement which had been explicitly limited by the trial court to Odom alone, but upon Odom's oral testimony which was admittedly evidential in all respects against Ravenell. Finally and in the light of all of the foregoing, we consider that the trial court's denial of severance did not constitute reversible error and did not overstep the limits of its discretionary authority as set forth in *State v. Rios, supra,* 17 *N. J.,* at *pp.* 583–586. See *State v. Johnson,* 31 *N. J.* 489, 505–507 (1960); *State v. Hall, supra,* 55 *N. J. Super.,* at *pp.* 451–454.

The defendant contends that his motion for judgment of acquittal should have been granted. He does not question the sufficiency of the evidence at the end of the entire case but rests on the New Jersey doctrine that a motion to acquit at the end of the State's case is to be tested solely on the evidence in the record at the time it was made. See *State v. Fiorello, supra,* 36 *N. J.,* at *p.* 86. That doctrine is accompanied by the settled principle that, in passing on such motion, the court will view the evidence and the reasonable inferences therefrom in the light most favorable to the State. See *State v. Fiorello, supra,* 36 *N. J.,* at *p.* 87; *State v. Dancyger,* 29 *N. J.* 76, 84, *cert.* denied 360 *U. S.* 903, 79 *S. Ct.* 1286, 3 *L. Ed. 2d* 1255 (1959). There is no doubt that the State's proof established the *corpus delicti, i. e.,* that the murders had in fact been committed. See *State v. Lucas, supra,* 30 *N. J.,* at *pp.* 53–54. The defendants had expressly stipulated that Warset and Polansky died as the result of bullet wounds which were "unlawfully and not self-inflicted upon them"; the stipulation was supported by the evidence relating to the finding of the bodies along with the testimony of the expert witnesses. And, though the defendant Ravenell disputes this, there was clearly sufficient evidence in the State's case from which the jury could infer that the murders had been committed in the course of a robbery. The open cash register, the absence of bills though receipts had exceeded one hundred and fifty-three dollars, and the location and condition

of the bodies, were more than enough upon which to rest the inference.

Ravenell's connection with the murders appeared from his own admissions as testified to by Barbara. While he attacks her testimony, it was legally competent and furnished support for the denial of the motion to acquit at the end of the State's case; at the end of the entire case, there was, of course, much more evidence to establish his connection with the murders. He contends that there was no independent corroboration of his admissions and that under *State v. Lucas, supra,* 30 *N. J.*, at *p.* 37, corroboration was essential. Most courts hold that where, as here, the *corpus delicti* has been proved, the State need not establish the identity of the perpetrator "by any evidence apart from his admissions." See *State v. Berkowitz,* 24 *Conn. Sup.* 112, 186 *A. 2d* 816, 819 (*Cir. Ct. App. Div.* 1962); *Manning v. United States,* 215 *F. 2d* 945, 947 (10 *Cir.* 1954); 45 *A. L. R. 2d* 1316, 1336–1338 (1956); 103 *U. Pa. L. Rev.* 638, 651 (1955).

In *Lucas,* this Court in dealing with a defendant's confession while in custody, expressed its approval of a requirement that there be independent facts or circumstances evidencing trustworthiness. See 30 *N. J.*, at *p.* 62. Trustworthiness was sufficiently evidenced here. Ravenell's admissions to Barbara were made in a conversation among friends including Odom. As part of the very same conversation, Odom stated that he was with Ravenell and that a customer came in the liquor store and was killed. There was independent evidence on the State's case that Odom went to the liquor store with another man, that Odom was in the liquor store but that the shots were fired by the other man and that a customer as well as the proprietor had been killed by the shots. We consider that, viewed in their entirety, the facts and circumstances evidenced the trustworthiness of the admissions testified to by Barbara (*cf. State v. Johnson, supra,* 31 *N. J.*, at *pp.* 502–503; *State v. Fauntleroy,* 36 *N. J.* 379, 399 (1962)) and satisfied the requirement of *Lucas* which, as an aid to truth and justice, should be dealt with flexibly rather than rigidly. See *McCor-*

*mick, Evidence, supra, pp.* 229–231; 7 *Wigmore, Evidence, p.* 395 (3*d ed.* 1940); 13 *Vand. L. Rev.* 561, 564 (1960).

The defendant contends that he was prejudiced by improper remarks of the Assistant Prosecutor during summation. At one point in his summation the Prosecutor first read from Barbara's direct testimony that she was at the Arthur Kill in the afternoon of June 20 and then remarked that there was no mention by her of two o'clock. In fact she had testified on cross-examination that it was "around two or after." In his charge, the trial judge specifically noted that he recalled Barbara's later testimony that the conversation took place at 2 P. M. or after and then he proceeded to instruct the members of the jury that they must rely on their own recollections rather than upon the recollections of counsel during summation. In the light of all this it is evident that no prejudice to Ravenell resulted from the Prosecutor's remark. The Prosecutor also stated in his summation that Odom had referred to the "poor guy" who walked in although there was no such precise testimony in the record. Here again the trial judge removed any prejudice by specifically instructing the jury that the reference to "poor guy" was not supported by the evidence and should be disregarded. Finally, the defendant complains that the Prosecutor stated that Warset "was on his hands and knees begging for his life" and had said "take the money, but don't kill me." Odom's statement had described Warset as being on his hands and knees begging not to be shot and to such extent as the Prosecutor's remark was applicable to the defendant Odom, it was not improper; in any event it appears clear from the entire record that it did not prejudice or impair any of Ravenell's substantial rights. *Cf. State v. Johnson, supra,* 31 *N. J.,* at *pp.* 510–512; *State v. McNair,* 59 *N. J. Super.* 453, 461 (*App. Div.* 1960), *cert.* denied 365 *U. S.* 829, 81 *S. Ct.* 715, 5 *L. Ed.* 2*d* 706 (1961).

The defendant attacks the trial court's charge to the jury as inadequate and prejudicial but we find no merit in his attack. On the contrary, when the charge is read in its

entirety, as it must be (*State v. Tansimore,* 3 *N. J.* 516, 525 (1950); *State v. Williams,* 39 *N. J.* 471, 486, *cert.* denied 374 *U. S.* 855, 83 *S. Ct.* 1924, 10 *L. Ed. 2d* 1075 (1963)), it fairly and justly presented the issues to the jury with accompanying legal instructions giving the defendant the full measure of protection which was his due under our adversary system. At one point the trial judge instructed the jurors that if any one of them had a reasonable doubt as to the guilt of either defendant he should not consent to a guilty verdict as to that defendant out of deference to the opinions of the others; at another point he told the jury that every person charged with crime is presumed to be innocent unless and until the State proves the guilt of such person beyond a reasonable doubt and that the presumption of innocence applied to Ravenell and Odom; at still another point he referred to the State's burden of proving its charge beyond a reasonable doubt and told the jury that that burden never shifts; and finally he told the members of the jury that if the State had failed to satisfy them of the guilt of a defendant beyond a reasonable doubt, "such defendant would be entitled to an acquittal." It is this last phrase which counsel for Ravenell urges to be erroneous on the ground that the term "entitled" does not suggest mandatory action by the jury. It is obvious that, in context, it does carry a mandate and that the jury could not have entertained any other view than that the defendant must be acquitted if the State did not establish guilt beyond a reasonable doubt.

In the course of his charge, the trial judge stated that the defendant Ravenell, as part of his denial of guilt, relies on what is known as an alibi and that "this simply means that he contends that he was not present at the time and place that the crimes are alleged to have been committed, but was somewhere else and therefore could not possibly have committed or participated in the crimes." Counsel for Ravenell objects to the use of the term "alibi" because he believes that in the layman's mind it is associated with "something contrived or phony." The term is commonly used in the law

as a plea that at the time and place of the crime the accused was elsewhere; it carries with it no sinister connotation. See *State v. Mucci,* 25 *N. J.* 423, 431 (1957); *State v. Driver,* 38 *N. J.* 255, 290 (1962). The jury must have so understood it for the trial judge defined it in clear and unequivocal language; it is inconceivable that the jury was in anywise misled. See *State v. Bertone, supra,* 39 *N. J.,* at *p.* 368.

The defendant's counsel has diligently and thoroughly sifted the charge and has presented additional questions as to its sufficiency; but the questions he raises are insubstantial and we find no showing of prejudicial error in them or in the concluding items set forth in his brief. The defendant had a fair trial, the verdict of guilty of murder in the first degree was supported by the evidence, and the recommendation of life imprisonment was within the discretion of the jury. The judgment below is, in all respects:

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.