60 N.J. 103 (1972)
286 A.2d 78
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES BELTON AND ULYSSES NEIL, DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued June 3, 1969.
Reargued December 21, 1971.
Decided January 17, 1972.
*106 Mr. Lawrence Weintraub argued the cause for appellant James Belton.
Mr. Peter R. Feehan argued the cause for appellant Ulysses Neil.
Mr. John A. Brogan, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the Court was delivered by JACOBS, J.
The defendants Belton and Neil were convicted of murder in the first degree. The jury recommended life imprisonment for Neil and he was sentenced accordingly; the jury made no recommendation as to Belton and he was sentenced to death. N.J.S.A. 2A:113-4. Both defendants appealed to this Court under R.R. 1:2-1(c)  now R. 2:2-1(a) (3).
The defendants entered the Riviera Motor Hotel in Fort Lee for the purpose of committing armed robbery. Belton pulled a gun and ordered the hotel manager to turn over the money in the cash register. He did so. In the meantime Neil had gone to the rear, had pointed his gun at the hotel's desk clerk who was then eating at a table, had taken his money, and had ordered him to disrobe. During the course of the robbery a silent burglar alarm was set off by the hotel manager and shortly thereafter the police arrived. As Patrolman Birch entered he was shot three times by Belton and he later died of his wounds. As other patrolmen *107 entered the defendants fled but were captured in short order.
Before trial Belton sought to plead non vult but his plea was rejected (State v. Belton, 48 N.J. 432 (1967)) and the matter came on for trial. During the trial Belton testified, acknowledging the robbery and the killing and aiming his defense at obtaining a recommendation of life imprisonment from the jury. Neil also testified during the trial, acknowledging that during the course of the robbery he had pointed his gun at the desk clerk, had taken his money, and had ordered him to disrobe. Neil's defense was that Belton had coerced him into the robbery but his story was evidently given no credit by the jury. In all, the State's testimony was overwhelming as against each of the defendants and the jury's verdict was clearly in conformity with the evidence and the trial court's charge.
The defendants have advanced various legal contentions which need be dealt with only in summary fashion. They attack the trial court's refusal to grant a change of venue and a severance but these were matters within the court's discretion and there has been no showing whatever of improper exercise or prejudice. See State v. Ravenell, 43 N.J. 171, 180-181 (1964), cert. denied, 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572 (1965); State v. Mayberry, 52 N.J. 413, 420-421 (1968), cert. denied, 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969); State v. Laws, 50 N.J. 159, 175 (1967), on reargument 51 N.J. 494, cert. denied, 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968). The defendants complain about pretrial publicity but it occurred more than eight months before the trial and did not prevent the selection of a proper jury. Indeed the defendants did not feel compelled to exercise all of their peremptory challenges and the mitigative recommendation in favor of Neil tends to support the substantial indications in the record that there were no improperly "aroused passions" (State v. Gallicchio, 51 N.J. 313, 318, cert. denied, 393 U.S. 912, 89 S.Ct. 233, 21 L.Ed.2d 198 (1968)), *108 nor any disabilities on the part of the jury to deal "fairly and impartially" with the evidence and the court's instructions. See State v. Ravenell, supra, 43 N.J. at 181.
The defendants attack the trial court's refusal to grant a mistrial after Juror Chankalian was excused, thereby leaving thirteen of the fourteen jurors chosen under the authority of R.R. 3:7-2(d)  now R. 1:8-2(d). During the voir dire Chankalian stated that he knew Assistant Prosecutor Polito in high school and that that was the last time he had any association with him. He further stated that insofar as the case against Belton and Neil was concerned his acquaintance with Polito would make "absolutely no difference" to him. He was chosen as a juror on Friday, June 9, on the following day the selection of the jury was completed, and on June 12 the trial began. On Saturday, June 10 Polito read a newspaper item listing Chankalian as a juror and on June 12 Polito advised the court that he had represented Chankalian in a title closing about two years earlier but that apart from that he had no association with him since high school. Thereupon the trial court excused Chankalian as a juror and proceeded with the remaining thirteen jurors.
Counsel for the defendants now advance the suggestion that Chankalian's presence may have contaminated the other jurors during the period prior to his excusal but there is nothing supportive before us. Indeed the motion for mistrial was not grounded on any suggestion of contamination but on the contention that the defendants were improperly being "precluded from having a group of fourteen jurors from which to choose" at the end of the case. The contention was properly rejected as utterly without merit for the defendants had no right to have fourteen jurors at the close of the case. The very reason for having the alternate jurors was to enable the proceedings to continue with at least the required twelve jurors if during the course of the trial a juror was, for any reason, no longer able to serve. See State v. Dolbow, 117 N.J.L. 560 (E. & A.), appeal dismissed, 301 U.S. 669, 57 S.Ct. 943, 81 L.Ed. 1334 (1937); *109 Pressler, New Jersey Court Rules, R. 1:8-2 (1971); Rules of Criminal Procedure, 18 U.S.C.A., Rule 24(c) (1969); 5A Moore's Federal Practice § 47.07 (1971).
The defendants complain about the introduction in evidence of four color photographs of the body of Patrolman Birch. They showed the entrance and exit wounds of the bullets fired by Belton and were relevant to the State's case. In State v. Smith, 32 N.J. 501 (1960), cert. denied, 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961), we pointed out that the admission of photographs having some probative value, even where cumulative and somewhat inflammatory, rests within the discretion of the trial judge "whose ruling will not be overturned save for abuse, as where logical relevance will unquestionably be overwhelmed by the inherently prejudicial nature of the particular picture." 32 N.J. at 525. It is clear to us that here the trial court did not exceed its discretionary authority in receiving the photographs in evidence and that, in the light of the entire record, its ruling could not have prejudiced any of the substantial rights of the defendants. See State v. Coleman, 46 N.J. 16, 26 (1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966); State v. Gosser, 50 N.J. 438, 448 (1967); State v. Conforti, 53 N.J. 239, 246 (1969).
The defendant Belton contends (a) that his proffered plea of non vult was erroneously rejected, (b) that the trial judge improperly refused to instruct the jury that the defendant had no right to plead guilty to the murder charge against him, (c) that New Jersey Rule 3:7-1(a)  now R. 1:8-1 is unconstitutional insofar as it restricts an accused "from waiving a jury trial," and (d) that the Grand Jury which indicted him was improperly chosen. The contentions have no merit. The rejection of the plea of non vult was within the trial court's discretion and there has been no showing of improper exercise. See State v. Belton, supra, 48 N.J. 432. The prohibition against the acceptance of a guilty plea was no concern of the jury and the trial judge *110 properly refused to deal with it in his charge; in any event there was no prejudice since the jury was made fully aware during the very opening by Belton's counsel and thereafter that Belton was admitting his guilt. See N.J.S.A. 2A:113-3; Pressler, supra, R. 1:8-1. The restriction against a unilateral waiver of jury trial by the accused presents no constitutional infirmity. See Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); Pressler, supra, R. 1:8-1. The attack on the selection of the Grand Jury was grounded entirely on the record in State v. Rochester; it was found there to be groundless and is of course equally groundless here. See State v. Rochester, 105 N.J. Super. 529 (Law Div. 1967), aff'd, 54 N.J. 85 (1969).
The remaining attacks in the brief filed by Belton's counsel appear to relate not to the issue of guilt but to the death penalty alone. Belton has filed a pro se brief in which he seeks a dismissal of the indictment against him "with prejudice". The points he raises have no merit and call for no expressions beyond those set forth earlier in this opinion. He, along with his codefendant, had a fair trial with all of the modern protective devices afforded by a democracy fully solicitous of individual rights. It would indeed be a most shocking miscarriage to dismiss the indictment as is sought in Belton's pro se brief or to grant a full new trial as is sought in one of the alternative claims for relief set forth in his counsel's brief.
The briefs of counsel for both Belton and Neil set forth an attack under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and counsel's brief for Belton sets forth an attack on the jury's alleged consideration of the possibility of parole. See State v. White, 27 N.J. 158 (1958). These attacks, if sustained, would call for a modification of Belton's death penalty to life imprisonment but would not impair the findings of guilt against him and Neil. See State v. Laws, supra, 50 N.J. at 187-189, 51 N.J. 494; State v. Royster, 57 N.J. 472 (1971); State v. Holland, 59 N.J. 451 (1971). Belton's counsel makes additional *111 attacks on the death penalty (cf. McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); State v. Thompson, 59 N.J. 396, 426-427 (1971)) which need not, however, be dealt with here in view of today's holding in State v. Funicello, 60 N.J. 60 (1972) that under the controlling decisions of the United States Supreme Court the death penalty in New Jersey's present statutory setup is unconstitutional. See Funicello v. New Jersey, 403 U.S. 948, 91 S.Ct. 2278, 29 L.Ed.2d 859, motion for clarification and petition for rehearing denied, 404 U.S. 876, 92 S.Ct. 31, 30 L.Ed.2d 125 (1971); United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). Funicello, supra, 60 N.J. 60, dictates that Belton's death penalty now be set aside and replaced by life imprisonment. Accordingly the judgment below insofar as Belton is concerned is modified to the end that he stands convicted of murder in the first degree with sentence of life imprisonment. The judgment below, insofar as Neil is concerned, is in all respects affirmed.
Modified in A-143.
Affirmed in A-144.
WEINTRAUB, C.J. (concurring).
I agree with the opinion except as to the italicized portion of this sentence:
He, along with his codefendant, had a fair trial with all of the modern protective devices afforded by a democracy fully solicitous of individual rights.
The reader might understand that "the modern protective devices" include doctrines under current disagreement. If so, we should not seem to say that anyone who does not do as we do is archaic or other than democratic or less than fully solicitous of human rights. Although that is not the intended thrust, I am reluctant to join in characterizations ambiguous in that regard. It is enough for me to say defendant's rights were respected.
*112 FRANCIS, J. (dissenting).
I dissent for the reasons expressed in my dissent in State v. Funicello, 60 N.J. 60 (1972). If, as the majority says, Belton "had a fair trial with all of the modern protective devices afforded by a democracy fully solicitous of individual rights," there should be no basis for reversal of the death sentence.
I join in the affirmance of Neil's life imprisonment sentence.
Weintraub, C.J., concurs in result.
For modification  Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, HALL, SCHETTINO and MOUNTAIN  6.
Opposed  Justice FRANCIS  1.
Weintraub, C.J., concurs in result.
For affirmance  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN  7.
For reversal  None.