225 N.J. Super. 1 (1988)
541 A.2d 700
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD DAVIDSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1988.
Decided May 5, 1988.
*4 Before Judges J.H. COLEMAN and STERN.
Andrew M. Epstein, Springfield, argued the cause for appellant (Epstein, Epstein, Brown & Bosek, attorneys; Andrew M. Epstein on the brief).
Janet Flanagan, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Janet Flanagan, of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant was indicted for fourth-degree criminal mischief, N.J.S.A. 2C:17-3a(1) (count one), third-degree putting others in fear of bodily violence, N.J.S.A. 2C:33-10 (count two), and fourth-degree causing damage to property, N.J.S.A. 2C:33-11 (count three). After his motion for a non-jury trial was denied, defendant was convicted by a jury on all counts. His motion for judgment of acquittal or new trial was denied, and defendant was sentenced on counts two and three to concurrent terms of five years probation. As a condition of his probation, defendant was directed to serve 364 days in jail, to perform 200 hours of community service "removing graffiti," as assigned by the probation department, to make restitution to the victims in the amount of $1,200, and to pay a $1,000 fine. Count one was merged into count three. Separate penalties were imposed for the benefit of the Violent Crimes Compensation Board.
On this appeal, defendant argues:
POINT I  THE JUDGMENT OF CONVICTION SHOULD BE REVERSED BECAUSE OF THE LOWER COURT'S ERROR IN NOT GRANTING DEFENDANT'S APPLICATION FOR A NON-JURY TRIAL.

*5 POINT II  THE JUDGMENT OF CONVICTION SHOULD BE REVERSED BECAUSE OF THE LOWER COURT'S ERROR IN ALLOWING INTO EVIDENCE LISA KOGER'S TESTIMONY THAT DEFENDANT ADMITTED POURING RICE INTO THE PIERRES' GAS TANKS.
POINT III  THE JUDGMENT OF CONVICTION SHOULD BE REVERSED BECAUSE OF THE LOWER COURT'S ERROR IN PERMITTING THE STATE TO CROSS-EXAMINE DEFENDANT AND DEFENSE WITNESS NELSON ABOUT RACIALLY DISPARAGING REMARKS MADE BY DEFENDANT.
POINT IV  THE JUDGMENT OF CONVICTION SHOULD BE REVERSED BECAUSE OF THE IMPROPER AND INFLAMMATORY REFERENCE BY THE STATE IN SUMMATION TO DEFENDANT'S PRIOR RACIALLY DEROGATORY EXPRESSIONS.
POINT V  THE LOWER COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR FOR A NEW TRIAL.
POINT VI  THE LOWER COURT ABUSED ITS DISCRETION IN IMPOSING A PRISON TERM ON DEFENDANT AS A CONDITION OF PROBATION, AND THIS COURT SHOULD CORRECT THAT ERROR BY DELETING THE PROVISION FOR IMPRISONMENT FROM DEFENDANT'S SENTENCE.
Our careful review of the record convinces us that, except as noted below, these contentions are clearly without merit and do not warrant extended discussion. R. 2:11-3(e)(2).

A.
In January 1983 the Pierre family  Jean, Marie and their seven-year-old daughter  who are black, bought and moved into a house in a predominately white neighborhood in Maplewood. In July someone poured rice or sugar into the gas tanks of the Pierres' two cars. A month later, during the night of August 12, 1983, someone spray-painted graffiti in large red letters (about three feet in size) on the Pierres' white house. Jean Pierre recalled observing the phrase "Move Out Soon House For Sale Cheap." Marie Pierre recalled seeing the phrases "Back to East Orange, Move Out, Nigger" and "Moving Soon, For Sale Cheap."
The police officer who responded to the scene of the spray-painted Pierre house, Officer Peter DeCicco, noted in his report that there were words painted on three sides of the house, *6 including "For Sale Cheap, Moving Soon." He considered them to be racial slurs.
The Pierres were afraid and terrified, and considered themselves "in danger." They considered the act to constitute a racial threat. Eventually, the Pierres moved out because they never felt safe in their home again.
In response to the incident, the Pierres called a painter, Ted Duda, who painted primer over the spray paint. Duda recalled the words "Moving Soon" and observed graffiti on three sides of the house. Despite Duda's efforts, the words still showed through. The Pierres therefore called another painter, James Osmun, to paint the house. Osmun characterized the graffiti as containing "racial slurs," including "Move Out," "Nigger," "KKK," "House for Sale, Moving Soon," and "Back to East Orange."
During the night of September 2, 1983 or early morning of September 3, 1983, the Pierre house was spray-painted a second time in similar fashion and with similar phrases.
Lisa Koger, defendant's friend and neighbor for about 13 years, testified for the State. Ms. Koger lived three houses away from defendant on the same street as the Pierres. Koger testified that while the spray-painted words were still visible, she participated in a friendly game of nerf touch football in the street not far from the Pierre house. During the game, defendant pointed to the house and asked, "Do you see that?" According to Koger, when she answered "[Y]es," defendant said, "I did that" and laughed. Koger recalled seeing only two of the three sides of the house spray-painted and the words, "House For Sale Cheap" and "Moving Soon."
Koger also testified that, about a month before the spray-painting incident, she was walking down Midland Boulevard with defendant when he told her to stop and wait for him. She watched defendant walk down the Pierres' driveway. Defendant came back out of the driveway running and told Koger to *7 run, too. A couple of days later defendant told Koger he had put rice in their cars' gas tanks.
Another of defendant's friends, Catherine Ann Zuzoro, also testified that, during the nerf touch football game in the street, defendant pointed to the Pierres' house and bragged to her that he "did that the other night." On her way home that day Ms. Zuzoro walked by the house for a closer look and saw that the graffiti was being painted over. However, she was able to see the letters "KKK" on the right side of the house.
Defendant testified. He denied putting any foreign substance in the gas tanks of the Pierres' cars or spray-painting their house. He denied telling Koger or Zuzoro that he put rice in the tanks or that he spray-painted the house. He could not recall his specific whereabouts on the evening of August 12. He denied playing football in the street on August 13 or 14, saying that on the 13th he had visited his grandmother with his parents and that on the 14th he and two friends left for the shore at about 2:00 p.m. Defendant claimed to have been home on the night of September 2, packing the car to leave for college the next morning. He could not explain why Zuzoro and Koger would lie about him and claimed that he did not see Ms. Koger much that summer because she was pregnant and was "hiding from us."
Defendant's parents recalled that defendant was at home during the nights of August 12 and September 2, and that defendant went with them to visit his grandmother on August 13, 1983.
Defendant was indicted for the events related to the spray painting and graffiti on the Pierre residence "on or about August 12, 1983."

B.
Defendant contends that the trial judge erred in denying his pretrial motion for a non-jury trial. Defendant sought a non-jury trial because he believed that a jury could not separate *8 the "emotional issue" of racial bigotry from the factual issues relating to defendant's guilt or innocence. Defendant argued that he could not obtain a fair jury trial.[1] The assistant prosecutor opposed defendant's motion, arguing that the controversial nature of this racial terrorism case demanded that the factual findings be made by a jury. In a letter opinion, the trial judge denied defendant's request for a non-jury trial. She was confident that a jury could "render a just and fair verdict without being prejudiced or swayed by extraneous matters," and thus refused to deny defendant the "fairest mode [of trial] possible"  "a jury of one's peers." Moreover, the judge observed that if the verdict ultimately appeared to be the product of passion and prejudice, she could set it aside pursuant to the court rules.
R. 1:8-1(a) provides in pertinent part:
Criminal actions required to be tried by a jury shall be so tried unless the defendant, in writing and with the approval of the court, after notice to the prosecuting attorney and his opportunity to be heard, waives a jury trial.
An accused charged with a crime has a constitutional right to a jury trial. Singer v. United States, 380 U.S. 24, 35-36, 85 S.Ct. 783, 790-91, 13 L.Ed.2d 630 (1965); Patton v. United States, 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930); U.S. Const., Amend. VI; N.J. Const. (1947), Art. I, par. 9, 10; N.J.S.A. 2C:1-4a. There is no correlative constitutional right to trial by a judge alone. Singer v. United States, supra, 380 U.S. at 26, 35, 85 S.Ct. at 785, 790, 13 L.Ed.2d at 633, 638. Thus, there is no constitutional infirmity in denying a defendant's request to waive trial by jury. Singer v. United States, supra, 380 U.S. at 36, 85 S.Ct. at 790-91, 13 L.Ed.2d at 638; State v. Belton, 60 N.J. 103, 110 (1972) (capital case). Whether *9 to permit waiver of the right to jury trial must be decided by the trial judge by the exercise of:
sound and advised discretion, with an eye to avoid unreasonable or undue departures from the mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity. [Patton v. United States, supra, 281 U.S. at 312-313, 50 S.Ct. at 263, 74 L.Ed. at 870].
Thus the discretion related to the required "approval" of the waiver must be exercised after an evaluation of the totality of circumstances, including recognition of the fact that jury trials are, as the trial judge here stated, "the preferred mode of fact-finding in criminal cases." See Singer v. United States, supra, 380 U.S. at 38, 85 S.Ct. at 791, 13 L.Ed.2d at 638; see also Patton v. United States, supra, 281 U.S. at 312, 50 S.Ct. at 263, 74 L.Ed. at 870; State v. Belton, supra, 60 N.J. at 110.
It may be, as defendant suggests, that by its very nature, a trial on charges of racial violence will be highly emotional. But our courts have consistently held that there are mechanisms, such as thorough voir dire, for assuring that a juror can be fair and impartial and able to decide the case based exclusively on the evidence against the defendant in the particular case involved. Most recently our Supreme Court made clear that a penetrating voir dire might be required when "racial overtones" are involved. See State v. Ramseur, 106 N.J. 123, 246 (1987). There, the court recognized that, as a matter of federal constitutional law, such questions are not required except in a capital case involving an interracial crime. See 106 N.J. at 245. See also Turner v. Murray, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986). However, the court, speaking through Chief Justice Wilentz, noted that there could be cases, unlike Ramseur, in which there would be "convincing justification ... requiring a more specific voir dire dealing with racial bias under state law." 106 N.J. at 246. The court quoted, with approval, from State v. Long, 137 N.J. Super. 124 (App.Div. 1975), certif. den. 70 N.J. 143 (1976):

*10 [w]here a defendant does request a voir dire inquiry as to potential prejudice because of color or other physical characteristics, it is better practice for a judge to accede to the request and pose simple and direct questions pointed to the specific element of prejudice involved. [137 N.J. Super. at 131].
As also stated by the Supreme Court in State v. Williams, 93 N.J. 39, 68-69 (1983):
Another important, indeed critical, means for dealing with potential and latent bias is the voir dire. The court should consider the efficacy of more exhaustive and searching voir dire examinations. The court in conducting the voir dire should be particularly responsive to the requests of counsel regarding the examination of prospective jurors as to potential bias. The court should consider whether there should be a greater willingness to resolve doubts in favor of the defendant in excusing jurors for cause. Particularly in capital cases, trial judges should exercise extraordinary care in the voir dire of potential jurors. [93 N.J. at 68-69 (footnotes omitted)].
The same principle should apply in a case like this where defendant is expressly charged with violating N.J.S.A. 2C:33-10 and 2C:33-11, which proscribes ethnic terrorism.
Defendant challenges the denial of his motion for a bench trial. But he does not attack the jury selection process, claim that the voir dire was inadequate or point to any fact to support the assertion that he was actually denied a fair trial before an impartial jury. In fact, defendant has not produced a transcript of the jury selection process, and he endeavored to make no record reflecting the composition of the jury as empaneled. In any event, we cannot find that the trial judge abused her discretion in not "approving" defendant's request to waive his right to a jury trial. Moreover, we are more than satisfied that the jury rendered its verdict based on the evidence, and not on collateral or extraneous matters not apparent or developed on the record.

C.
At the conclusion of an Evid.R. 8 hearing, the trial judge held that the State could admit evidence to show that, approximately a month before the spray-painting incident, defendant had poured rice or sugar into the gas tanks of the Pierres' two cars. The judge ruled that the evidence was admissible pursuant *11 to Evid.R. 55 to show defendant's intent and state of mind, a fact she deemed to be in issue. Furthermore, the judge rejected its exclusion under Evid.R. 4.
At the Evid.R. 8 hearing, Marie Pierre testified that, on the morning of July 12, 1983, she, her husband and daughter were driving to the shore and stopped at a gas station to get gas. The gas station attendant told them that someone had put sugar in their tank, pointing out to them the presence of sugar around the tank opening, on the cap and down the side of the car. When the Pierres returned home that evening they saw someone had also poured a substance in the gas tank of their other car. The police were called, and the incident was reported.
Defendant's friend, Lisa Koger, also testified at the Evid.R. 8 hearing. As she subsequently noted at trial, Koger testified that she and defendant were walking by the Pierre house one night when suddenly defendant told her, "Wait here," while he entered their driveway. Koger could not see what defendant did, but a short while later, defendant exited the driveway and told Koger to "run." Two days later, defendant told Koger that he had put rice in the Pierres' gas tank.
Defendant testified at the hearing as well. He denied pouring sugar, rice or any foreign substance into the Pierres' gas tanks, or telling Koger that he had done so. However, he could not recall where he was on the evening in question. He could not explain why Koger would lie about his involvement, other than to say, "[s]he has a history of doing this."
Before us defendant complains that the State failed to provide "clear and convincing evidence that defendant had committed the gas tank caper." However, the trial judge found "clear and convincing proof" based on Ms. Koger's testimony that the prior incident occurred and that it was admissible and relevant to "his intent and state of mind." We agree.
Defendant next complains that this "`other crimes' evidence" was not relevant to a fact in issue. Specifically, defendant *12 argues that there was no proof that the other crime evidence was related to "the racially motivated spray-painting act which produced the indictment."
However, as the trial judge concluded (and as she expressly instructed the jury at the time of admission and in her general instructions), this other crime evidence had some bearing on defendant's motive, intent, plan and state of mind, and was admissible only on that basis. N.J.S.A. 2C:33-10 requires the State to prove, beyond a reasonable doubt, that defendant acted "purposely, knowingly or recklessly," and N.J.S.A. 2C:33-11 requires purposeful conduct.[2] In prosecuting defendant under N.J.S.A. 2C:33-10, the State obligated to prove, as alleged in the indictment, that defendant acted "purposely, knowingly or recklessly" to put the Pierres in fear of bodily violence, by placing graffiti on their house, which graffiti exposed the family to threats of violence, contempt or hatred because of their race or color. N.J.S.A. 2C:33-10. The prosecution under N.J.S.A. 2C:33-11 required the State to prove that defendant purposely defaced or damaged their property "by placing thereon graffiti that exposed [them] to threat of violence, contempt *13 or hatred on the basis of race [or] color." N.J.S.A. 2C:33-11. Clearly, evidence that defendant, just a month before, had damaged the Pierres' property in another way, by putting a substance in their cars' gas tanks, tended to show that defendant had targeted the Pierres as victims of a campaign of terror. State v. Kent, 173 N.J. Super. 215, 220 (App.Div. 1980).

D.
Defendant contends that the trial judge committed reversible error in allowing the assistant prosecutor, over objection, to cross-examine defendant and defense witness Nelson concerning certain statements uttered by defendant about blacks. Specifically, on cross-examination the prosecutor asked defendant, "[A]re you prejudiced against black people?" When defendant answered in the negative, the prosecutor questioned whether he had ever spoken or written about black people in a derogatory manner. Defendant admitted that he had, but "[i]n a joking fashion, with [his] friends." The prosecutor elicited admissions from defendant that he had referred to blacks as "niggers," "spear chuckers" and "jigaboos," and that he had drawn pictures of a burning cross and hooded "KKK" people bearing the letters "KKK." Defendant insisted that he made these statements as jokes for his friends.[3]
The following day, the prosecutor was permitted, again over objection, to cross-examine defense witness Nelson about two statements he had made to F.B.I. agents regarding certain statements by defendant about black people. Nelson had told the F.B.I. that defendant had complained to him about "niggers moving into the area and causing property values to go down" *14 and "niggers hav[ing] no [car] insurance." Nelson, too, maintained that defendant was only joking and was not "malicious."
On appeal defendant complains that this testimony constituted "bad character" evidence that was inadmissible under Evid. R. 47. However, in denying defendant's motion for new trial, the judge stated that she had deemed the testimony relevant to defendant's state of mind which was an element the state had to prove. The judge was persuaded that an accused's state of mind towards blacks was an issue implicated under N.J.S.A. 2C:33-10 and -11, crimes that require a specific intent to threaten harm against another because of his race. We conclude, given the specific charges before the court, that the evidence was admissible and that the judge did not abuse her discretion in permitting it. In the absence of any specific issue addressed thereto, we do not comment on the need for limiting instructions to be given in this type of situation. We see no basis for reversal.
Defendant also argues, as he did before the trial judge, that the prosecutor's summation exceeded the bounds of fair play and appealed to the prejudice of the jurors. Specifically, defendant complains that the prosecutor's references to defendant's "racially derogatory statements" towards black people were improper and caused the jury to convict defendant because he was a "bigot," a term used by the prosecutor referring to the evidence, rather than because he was guilty of the crimes charged. This claim, rejected by the judge on timely objection, has no merit.
The prosecutor's references to defendant's derogatory remarks and statements about blacks constituted permissible comment on the evidence. See State v. Farrell, 61 N.J. 99, 102 (1972). Defendant had admitted making these remarks and statements. Defense counsel, in his summation, had referred to defendant's derogatory remarks about blacks in an effort to minimize their impact and to point out that defendant credibly admitted saying these things while denying the acts charged. Beyond this, the prosecutor did not urge the jury to convict *15 defendant because he was a bigot; rather, he argued that the State produced sufficient proof of the requisite state of mind or actual intent to harm the Pierres because of his race. While personal attitudes about race generally have no place in the courtroom and comments regarding them should generally be prohibited, the defendant's purpose or intent was relevant to the elements charged in this case.[4]

E.
Defendant contends that his sentence, particularly the 364-day county-jail term, is "so unreasonable as to be shocking."
Defendant was sentenced for a third-degree and a fourth-degree crime. Because he had no prior convictions, a presumption of non-imprisonment applied. N.J.S.A. 2C:44-1e. However, the trial judge found that the presumption was "overcome by the facts of this case" and determined that imprisonment was necessary for the protection of the public. In State v. Hartye, 105 N.J. 411 (1987), decided after defendant's sentencing, the Supreme Court held that the presumption need not be overcome to sentence a first offender to jail as a condition of probation and that where the presumption against imprisonment is overcome, "a defendant's sentence must fall within the presumptive range" for the offense, in this case three to five years for the third degree crime. Id. at 420.
It may well be that the trial judge believed at the time that the presumption against imprisonment had to be overcome in order to impose the custodial aspect of probation. At the time of sentencing in this case, there was authority for that proposition. See State v. Gardner, 215 N.J. Super. 84, 92-93 (App.Div. 1987), certif. granted, 108 N.J. 213 (1987); State v. Hess, 198 N.J. Super. 322 (App.Div. 1984); but see State v. *16 Hartye, 208 N.J. Super. 319 (App.Div. 1986), aff'd 105 N.J. 411 (1987); cf. State v. Whidby, 204 N.J. Super. 312 (App.Div. 1985). We need not speculate as to whether the trial judge would have found the presumption overcome if she realized that the custodial aspect of probation could have been imposed without doing so. In any event, the State cannot appeal from a lenient (but lawful) sentence imposed on a third or fourth degree crime, and the State has neither appealed the sentence nor argued that it is "illegal," notwithstanding that the presumption was overcome.[5]
Finally, while the presumption against imprisonment exists notwithstanding that deterrence is a statutory aggravating factor, N.J.S.A. 2C:44-1a(9) which may be applicable in most cases, a case involving racial or ethnic violence may today involve a particular need for general deterrence.
Affirmed.
NOTES
[1] Defendant's concern about the admissibility of a "highly inflamatory" letter "seized from the defendant's dormitory room which included derogatory statements about Blacks and Jews" was mooted by the judge's ruling before trial that the letter was inadmissible. She stated, among other things, "[i]t is inflammatory, and there is a great potential for prejudice that would deprive this defendant of a fair trial."
[2] N.J.S.A. 2C:33-10 reads:

A person is guilty of [a] crime of the third degree if he purposely, knowingly or recklessly puts or attempts to put another in fear of bodily violence by placing on public or private property a symbol, an object, a characterization, an appellation or graffiti that exposes another to threats of violence, contempt or hatred on the basis of race, color, creed or religion, including, but not limited to a burning cross or Nazi swastika. A person shall not be guilty of an attempt unless his actions cause a serious and imminent likelihood of causing fear of unlawful bodily violence.
N.J.S.A. 2C:33-11 reads:
A person is guilty of a crime of the fourth degree if he purposely defaces or damages, without authorization of the owner or tenant, any private premises or property primarily used for religious, educational, residential, memorial, charitable, or cemetery purposes, or for assembly by persons of a particular race, color, creed or religion by placing thereon a symbol, an object, a characterization, an appellation, or graffiti that exposes another to threat of violence, contempt or hatred on the basis of race, color, creed or religion, including, but not limited to, a burning cross or Nazi swastika.
[3] Following this testimony, the prosecutor sought to admit into evidence a letter that defendant had written and that apparently contained severely derogatory comments about blacks and other ethnic groups. The prosecutor argued it was admissible as a prior inconsistent statement. The trial judge had previously ruled that this letter was inadmissible. See fn. 1, supra. The judge maintained that ruling and refused to allow the prosecutor to admit the letter as a prior inconsistent statement.
[4] We do not approve of some of the prosecutor's comments directed to American values and patriotism, but we find that no comment individually or in the aggregate warrants reversal.
[5] This opinion should not be interpreted as suggesting that the sentence is illegal. See State v. Hartye, supra; State v. Gardner, supra, now on appeal to the Supreme Court.