590 A.2d 1144

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ROBERT DUNNE, DEFENDANT-APPELLANT.

Argued September 10, 1990—Decided May 30, 1991.

304

John David Healy, Designated Counsel, argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney).

Lisa Sarnoff Gochman, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, Justice.

A jury has convicted defendant of a bizarre murder that occurred in the South Mountain Reservation in 1986. The principal ground of appeal before us is that defendant was improperly denied the right to have the charges tried by a judge and not a jury. We hold that there is no unilateral right to a non-jury trial in such circumstances and that the trial court did not abuse its discretion in determining that the issues were properly to be decided by a jury.

I

On the morning of May 11, 1986, a security guard at Saint Barnabas Hospital in Livingston observed a car on the curb outside the hospital entrance. The driver's door was ajar. A man, in obvious pain and bleeding from the chest, was sitting in the driver's seat. He was a resident physician at the hospital. There was blood inside the car. The dying man brought to the

guard's attention a license plate number that he had written on an index card that was on the passenger's seat. Despite extensive surgery in an attempt to save his life, he bled to death from a stab wound to his heart by early afternoon of that day.

On the basis of the index card, the police determined that the license plate belonged to a car that had been rented by defendant, a resident of 23 Quarry Terrace in West Orange. The rented car was observed parked in front of that address. The police also received a call from defendant's cousin, informing them that defendant had told him that he might have stabbed someone. The police went to 23 Quarry Terrace and spoke with defendant's cousin, who told them defendant was inside the house. In response to a request from the police, defendant's cousin brought defendant outside. After arresting defendant, the police entered the house and found a knife on the coffee table. Because the crime had occurred at the South Mountain Reservation, within the jurisdiction of the Essex County Police, the police transported defendant to the Essex County Police Headquarters in Newark, accompanied by his father. When the police informed them that the victim had died, defendant and his father started to cry. Defendant confessed that earlier that morning he had ventured upon the victim in the Reservation, and had stabbed him.

Defendant anticipated raising an insanity defense at trial that would require testimony on the abnormal homosexual fantasies that may have moved defendant to attack the victim. Fearing adverse jury reaction to that defense, defendant made a pretrial motion for a non-jury trial. The trial court denied that motion. At trial, defendant raised the insanity defense, having indicated to his testifying physician that he had heard vague and indistinct voices telling him to "do it." The doctor testified that defendant suffered from paranoid schizophrenia. In the opinion of the doctor, defendant, on the morning of May 11, 1986, became acutely psychotic and lost touch with reality. For unexplained reasons, defendant's persistent fantasies of homo-

sexual gratification and aggression blended with reality, resulting in the attack. The doctor believed that defendant did not know that what he was doing was wrong.

The jury convicted defendant of murder. During deliberations the jury requested two read-backs of the psychiatric testimony offered by defendant, and asked the court for the legal definition of insanity. The jury also asked if it could return a verdict with a recommendation and if defendant would receive proper treatment and medication without regard to its verdict. Following the conviction, the court sentenced defendant to thirty years' imprisonment. The Appellate Division affirmed the conviction, and we granted defendant's petition for certification. 117 *N.J.* 638, 569 *A.*2d 1338 (1989).

## II

As noted, the principal point raised in defendant's appeal is that the trial court erred in denying defendant's motion for a bench trial. That argument actually has two aspects: (a) whether defendant was entitled to a bench trial as a matter of right, or (b) whether the trial court abused its discretion in not granting a bench trial.

Defendant based his request for a non-jury trial on two grounds. First, defendant suggested that the jury would be prejudiced against him by the psychiatric testimony that was to be presented on the defense of insanity. He submitted that the jury "when encountering a really terrible killing which occurred in a public place for no apparent reason * * * may well feel that letting Mr. Dunne off on psychiatric grounds is not adequate, is dangerous, is risky, and goes against their moral beliefs." Second, he argued that because the defense would be presenting medical evidence that would reveal that defendant had violent and abnormal homosexual fantasies, the jury's evaluation of the testimony on the insanity defense would become tainted and biased against him.

Defendant argued that a jury waiver was appropriate be-
cause the court would be in a better position to evaluate the
psychiatric testimony and the insanity defense without any of
the anticipated biases of the jury. The trial court denied the
motion to waive the jury, ruling that "this is the kind of case
that is appropriate to have the community decide the case, that
the community should be the one that should obtain in a case of
this nature. I see no compelling reasons why the case should
go non-jury." The court further noted that the proposed jury
*voir dire* would sufficiently screen out jurors who would be
prejudiced against defendant.

We deal first with the question of whether defendant had a
unilateral or absolute right to demand a non-jury trial, and then
with the question of whether the trial court abused its discre-
tion in not granting a non-jury trial.

## A.

Over sixty years ago, in *Patton v. United States*, 281 *U.S.*
276, 50 *S.Ct.* 253, 74 *L.Ed.* 854 (1930), Justice Sutherland set
forth the guiding principles that dictate the disposition of this
case. In *Patton*, a defendant in a prohibition bribery trial had
consented in open court that his trial should continue with only
eleven jurors, following the removal of one juror who had
become seriously ill. The eleven remaining jurors found him
guilty. On appeal, the defendant challenged the jurisdiction of
the District Court to conduct a trial with only eleven jurors,
even with the consent of the defendant. The Court reviewed all
of the outstanding precedent that would give light to an under-
standing of the constitutional right of a defendant to demand
trial by jury under article III, section 2, clause 3, and the sixth
amendment of the United States Constitution. In light of the
provisions' history, the Court concluded that "it is reasonable to
conclude that the framers of the Constitution simply were
intent upon preserving the right of trial by jury primarily for
the protection of the accused." *Id.* at 297, 50 *S.Ct.* at 257–58,

74 *L.Ed.* at 862.  The Court did not believe that the framers intended to establish the jury in criminal trials as an "integral and inseparable part of the court."  *Ibid.*  It thus concluded that "article III, § 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election.  To deny his power to do so is to convert a privilege into an imperative requirement."  *Id.* at 298, 50 *S.Ct.* at 258, 74 *L.Ed.* at 863.

The Court next considered whether a court should deny a defendant's power to waive a trial by jury in criminal cases on grounds of public policy.  The Court concluded that because a defendant indeed had the right to waive the trial itself by pleading guilty to the charges, it would not be contrary to public policy to permit the lesser event, that is, the submission to trial by fewer than twelve jurors or by a judge.

The Court set forth principles that remain of enduring guidance.

> In affirming the power of the defendant in any criminal case to waive a trial by a constitutional jury and submit to trial by a jury of less than twelve persons, or by the court, we do not mean to hold that the waiver must be put into effect at all events.  That, perhaps, sufficiently appears already.  Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses.  In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied.  Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a factfinding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant.  And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from the mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.  [*Id.* at 312–13, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870.]

Consistent with those principles, *Rule* 23(a) of the later enacted Federal Rules of Criminal Procedure provides that "[c]ases required to be tried by jury shall be so tried unless the

defendant waives a jury trial in writing with the approval of the court and the consent of the government."

In *Singer v. United States,* 380 *U.S.* 24, 25, 85 *S.Ct.* 783, 784, 13 *L.Ed.*2d 630, 632 (1965), the defendant challenged the constitutionality of *Rule* 23(a), arguing that the United States Constitution "gives a defendant in a federal criminal case the right to waive a jury trial whenever he believes such action to be in his best interest, regardless of whether the prosecution and the court are willing to acquiesce in the waiver." Singer was charged with mail fraud. He offered to waive a jury in order to shorten the trial. Even though the trial court was willing to approve the waiver, the prosecution refused to consent. After reviewing English and American history surrounding the waiver of a jury trial, the Supreme Court concluded:

> A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him. [*Id.* at 36, 85 *S.Ct.* at 790, 13 *L.Ed.*2d at 638.]

Limiting its decision to the facts, however, the *Singer* court suggested an exception to the rule by pointing out that because the petitioner had requested the waiver only to save court time, it need not determine

> whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial. [*Id.* at 37, 85 *S.Ct.* at 791, 13 *L.Ed.*2d at 639.]

Absent proof of such special circumstances, federal constitutional doctrine remains the same, that there is no federal constitutional right to trial by a judge alone.

The question arises, then, whether we should interpret our New Jersey constitutional provision for trial by jury in any significantly-different manner. *See N.J. Const. of 1947* art. I, §§ 9, 10. We are unable to find any significant constitutional preference in New Jersey's history or tradition for a different result. *Cf. State v. Hempele,* 120 *N.J.* 182, 576 *A.*2d 793 (1990)

(decidedly higher notions of personal privacy warrant different rule in New Jersey for protection of waste disposal from those prevailing elsewhere). New Jersey's consistent tradition has been that every right and privilege secured by our State Constitution belongs to each citizen, "as a personal right." *State v. Stevens,* 84 *N.J.L.* 561, 563, 87 *A.* 118 (Sup.Ct.1913). That tradition includes, specifically, the guarantee that "the accused shall have the right to a speedy and public trial by an impartial jury," *N.J. Const. of 1947* art. I, § 10, and "so far as [the] right to a trial by jury is concerned, [a defendant] may waive it." *State v. Stevens, supra,* 84 *N.J.L.* at 563, 87 *A.* 118. Our courts found, as did the United States Supreme Court, that there is no constitutional impediment to the exercise of jurisdiction to try criminal causes without a jury. In *Edwards v. State,* 45 *N.J.L.* 419 (Sup.Ct.1883), the defendant contended that the Legislature did not have the capacity under the Constitution to provide for non-jury trial of certain limited or petty offenses. The *Edwards* Court invoked the same rationale as did the United States Supreme Court in *Patton v. United States, supra,* 281 *U.S.* 276, 50 *S.Ct.* 253, 74 *L.Ed.* 854, noting that those constitutional rights were personal to the defendant and could be waived. In short, nothing in New Jersey's history or tradition suggests any implied correlative right on the part of a defendant to demand trial by a judge and not by jury.

### B.

The remaining question is whether the trial court abused its discretion in denying defendant's request for a non-jury trial.

*Rule* 1:8-1(a) is the provision in our Rules that deals with non-jury trials in criminal cases. Like the federal rule, our state Rule mandates that the defendant must first obtain the approval of the trial court in order to waive the right to a jury trial. Our Rule differs from the federal rule in that except in capital cases pursuant to *N.J.S.A.* 2C:11-3c(1), our Rule does

not require the approval of the prosecutor; it merely requires notice to the prosecutor that the defendant has waived the right. *See State v. Davidson,* 225 *N.J.Super.* 1, 541 *A.*2d 700 (App.Div.1988).

The 1969 Revision of our Rules changed criminal practice by eliminating the State's consent as a prerequisite to the defendant's waiver of a jury trial. The history of the Rule has been well summarized in the 1991 edition of *Rules Governing the Courts of the State of New Jersey.* Judge Pressler notes that the Criminal Practice Committee was expressly aware that the constitutionality of the analogous federal *Rule* 23(a), requiring the government's consent as well as the consent of the court and the defendant, was sustained by *Singer v. United States, supra,* 380 *U.S.* 24, 85 *S.Ct.* 783, 13 *L.Ed.*2d 630. Pressler, *Current N.J. Court Rules,* Comment on *R.* 1:8–1 at 70 (1991).

One court has interpreted the 1969 deletion of the requirement of prosecutorial consent as, in effect, creating a constitutional preference for non-jury trial, at least when one is requested by a defendant. *State v. Fiorilla,* 226 *N.J.Super.* 81, 543 *A.*2d 958 (App.Div.1988). In *Fiorilla,* the defendants were accused of various Medicaid-fraud charges relating to their operation of nursing homes. The defendants moved for a waiver of jury trial, citing extensive pretrial publicity and the likely length and complexity of the trial. Concerned about the public's expectation of trial by jury, the trial court denied the defendants' motion. Reversing the trial court's decision, the Appellate Division held that "the trial judge erroneously failed to consider the substantial good-faith reasons advanced in support of waiver in exercising his discretion to preclude bench trial solely because of his perception of public expectation." *Id.* at 93, 543 *A.*2d 958.

The Appellate Division found that although the defendants did not have a constitutional right to waive jury trial, a trial court should not deny the defendants' waiver unless "sufficient reasons exist." *Id.* at 90, 543 *A.*2d 958. In an effort to give

guidance to trial courts, the *Fiorilla* court set out a three-pronged test for determining when a court should deny the defendant's request for jury waiver:

> (1) a defendant has not voluntarily, knowingly and competently waived his constitutional right to jury trial with advice of counsel; or that,
>
> (2) the waiver is not tendered in good faith, but as a stratagem to procure an otherwise impermissible procedural advantage; or that,
>
> (3) consequential, overriding, demonstrable and articulated reasons exist to require a jury trial [that] outweigh the reasons and record provided by the defendant in support of waiver. [*Id.* at 92, 543 *A.*2d 958.]

In its analysis of *Rule* 1:8–1(a), the *Fiorilla* court concluded that "deletion of the requirement for consent by the prosecutor must be read to suggest some recognition of the 'privilege' theory of jury trial enunciated by the early New Jersey decisions and in *Patton, supra.*" *Id.* 226 *N.J.Super.* at 90, 543 *A.*2d 958. We are unable, however, to discern in the early New Jersey recognition of the "privilege" theory the creation of any correlative superior right to a non-jury trial. Chief Justice Warren convincingly demonstrated in *Singer v. United States, supra,* 380 *U.S.* 24, 85 *S.Ct.* 783, 13 *L.Ed.*2d 630, that the ability to waive a constitutional right does not ordinarily carry with it the right to insist on the opposite of that right. For example, although able to waive the right to a public trial, a defendant cannot compel a private trial. Although able to waive the right to be confronted by witnesses, a defendant can never compel the government to try the case by stipulation.

Thus, although we agree with the premise of the *Fiorilla* court that the denial of a request for a non-jury trial cannot be a reflexive reaction and must be based on "an exercise of discretion by the trial court based on its consideration of the circumstances of the case," neither the Constitution nor the Rules of the Court tilt in favor of a non-jury trial. *State v. Fiorilla, supra,* 226 *N.J.Super.* at 88, 543 *A.*2d 958. Rather, we believe that the more serious the crime, the greater the "gravity" of the offense, *Patton v. United States, supra,* 281 *U.S.* at 313, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870, the greater the

burden on the defendant to show why there should be a non-jury trial.

Hence, the third prong of *Fiorilla* goes too far. In major crime litigation, to consider public confidence in the jury process as a relevant factor in the balance can never be deemed inconsequential. That has been clear since *Patton, supra,* which emphasized that when deciding on a defendant's waiver of a jury trial, courts should show a "caution increasing in degree as the offenses dealt with increase in gravity." 281 *U.S.* at 313, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870. In exercising that discretion, a court must consider the competing factors that argue for or against jury trial.

One of the most important factors to consider is the judiciary's obligation "to legitimately preserve public confidence" in the administration of justice. *In re Edward S.,* 118 *N.J.* 118, 148, 570 *A.*2d 917 (1990). "There is probably no determination that causes more concern and doubt in the minds of the public about the fair and sound operation of our criminal laws than a jury verdict of not guilty by reason of insanity in a murder case." *Id.* at 138, 570 *A.*2d 917.

Because it is best to discuss such issues in concrete terms, we may take guidance from the Second Circuit's decision in *United States v. Moon,* 718 *F.*2d 1210 (1983), *cert. denied,* 466 *U.S.* 971, 104 *S.Ct.* 2344, 80 *L.Ed.*2d 818 (1984). In that case the Reverend Sun Myung Moon contended that widespread public hostility against him prejudiced his right to a fair trial and required trial by judge. The government countered that there was "an overriding public interest in the appearance as well as the fact of a fair trial, which could be achieved only by a jury." *Id.* at 1217. The government insisted that, especially because of this challenge to the fairness of the proceedings, "employing this normal and preferable mode of disposing of fact issues in a criminal trial" would engender confidence in the outcome. *Ibid.* The Second Circuit agreed. Public confidence in a criminal verdict *is* best sustained by a jury finding. And when we

speak of the appearance of justice, we are not trying to avoid judicial responsibility to ensure the actuality of justice. We always expect judges to be made of sterner stuff, "able to thrive in a hardy climate," and never to fear public clamor over any decision. *Craig v. Harney*, 331 *U.S.* 367, 376, 67 *S.Ct.* 1249, 1255, 91 *L.Ed.* 1546, 1552 (1947). Our judges have no fear of tough decisions. In fact, the underlying criminal trial in *In re Edward S.*, *supra*, was a bench trial. 118 *N.J.* at 121, 570 *A.*2d 917. Even in capital cases, judges have accepted jury waivers. See *State v. Di Frisco*, 118 *N.J.* 253, 571 *A.*2d 914 (1990). We rather suspect that in many cases waiver requests are routinely granted.

■ A court must always ensure, however, that denying a defendant's request for non-jury trial never denies the defendant a fair trial. *See Singer v. United States, supra*, 380 *U.S.* at 37, 85 *S.Ct.* at 791, 13 *L.Ed.*2d at 639. But the validity of a claim of unfairness is better shown after *voir dire* of prospective jurors. The trial court in the *Moon* case, as did the trial court in this case, "wisely recogniz[ed] that this was a safer avenue to follow in order to ascertain whether a fair jury could be obtained [and] properly reserved until after the *voir dire*" its option to order a trial by jury. 718 *F.*2d at 1218. In this case, the trial court formulated questionnaires, after consultation with counsel, to be submitted to the jury in the *voir dire* process. Jurors must have reassured the court that they could follow the law because defendant did not renew his motion for a non-jury trial after the jury-selection process.

■ To sum up, trial by jury is fundamental to the American system of criminal justice. A defendant may waive the right to trial by jury and instead be tried by the court. However, a defendant does not have a constitutional right to waive a jury trial and insist on a bench trial. Trial by jury is the "normal and, with occasional exceptions, the preferable mode of disposing of issues of fact" in major criminal cases. *Patton v.*

*United States, supra,* 281 *U.S.* at 312, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870. Courts should be sensitive to special circumstances that might hinder the fair trial rights of a defendant. With the change that we have made to the third prong of the *Fiorilla* test, we believe that it is better stated that when reviewing a request to waive a jury trial, a court should:

(1) determine whether a defendant has voluntarily, knowingly, and competently waived the constitutional right to jury trial with advice of counsel;

(2) determine whether the waiver is tendered in good faith or as a stratagem to procure an otherwise impermissible advantage; and

(3) determine, with an accompanying statement of reasons, whether, considering all relevant factors, including those listed below, it should grant or deny the defendant's request in the circumstances of the case.

■ Although there is no "judicial calculus that unerringly resolves each case," *State v. R.G.D.,* 108 *N.J.* 1, 12, 527 *A.*2d 834 (1987), the "evidential axis" that we described in *R.G.D.* provides a useful analogy. At one end of the scale, tilting in favor of jury trial, will be the gravity of the crime. The higher the degree of the crime, the greater the weight given to that factor. Other factors that will tip the scale will be the position of the State, the anticipated duration and complexity of the State's presentation of the evidence, the amenability of the issues to jury resolution, the existence of a highly-charged emotional atmosphere (this may work both ways as in *Moon, supra,* 718 *F.*2d 1210), the presence of particularly-technical matters that are interwoven with fact, and the anticipated need for numerous rulings on the admissibility or inadmissibility of evidence. The sources of principled decision-making will remain rooted in a statement of reasons that will accompany the decision. This statement of reasons will give structure to the trial court's discretionary judgment and will soundly guide

appellate review. *State v. Roth*, 95 *N.J.* 334, 363–64, 471 *A.*2d 370 (1984).

Despite this, the dissent faults us for vesting in trial courts a discretion that is "totally unfettered and unguided." *Post* at 337, 590 *A.*2d at 1161. Yet we have set forth specific factors to guide trial courts that are not dissimilar to those employed by those courts in other discretionary determinations. *See State in the Interest of C.A.H.*, 89 *N.J.* 326, 346, 446 *A.*2d 93 (1982) ("The waiver decision [from juvenile court to adult court for trial by jury] is a highly discretionary one and calls for fine judgment."). Here, as there, we repose the greatest confidence in the ability of trial judges to exercise sound discretion.

And, although stating that a defendant "should, in most circumstances, be permitted to waive a jury trial," *post* at 337, 590 *A.*2d at 1161, our dissenting members ultimately fashion a rule that provides no such right and sets forth no such standards. They fashion a rule that, like ours, must rest in the sound discretion of the trial court. The dissent's formulation of the third prong of *Fiorilla* is that a waiver request should not be denied unless "the trial judge has determined that * * * there are articulable reasons why, in the context of the case and the surrounding circumstances, a jury is inherently better able to hear the case than a judge, and those reasons outweigh the defendant's reasons for waiving a jury trial." *Post* at 337, 590 *A.*2d at 1161. Despite the shift in burden and emphasis, unless the dissent is to forbid a trial court to consider the intrinsic value of trial by jury, there is nothing in its formulation that would lead to a grant of waiver "in most circumstances."

That intrinsic value of trial by jury has earned public confidence over time. We need only recall Chief Justice Warren in *Singer:* " '[T]he maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions' " that, under federal law, a defendant may not unilaterally insist on a trial before a judge alone. 380 *U.S.* at

34, 85 *S.Ct.* at 789, 13 *L.Ed.*2d at 637 (quoting *United States v. Patton, supra,* 281 *U.S.* at 312, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870). "[I]ts intrinsic fairness as contrasted with older modes" has made jury trial "the one regular common-law mode of trial, always to be had when no other was fixed." *Id.* at 28, 85 *S.Ct.* at 786, 13 *L.Ed.*2d at 634 (quoting Thayer, *A Preliminary Treatise on Evidence at the Common Law* 60 (1898)). Thus, through trial by jury, "in most circumstances" justice can be done. A fair trial is afforded to the accused, and public confidence in the criminal justice system is preserved.

We would never deprive the defendant of a fair trial in order to maintain public confidence, and on those occasions when fairness requires a waiver, obviously it must be granted. Having said that, we must never forget, as we have stated so often, the importance of maintaining the public's confidence in our criminal-justice system. Trial by jury, for reasons rooted in our history and tradition, is one of the foundations of that confidence. It is a foundation not simply because of trust in the common man, trust in the verdict of one's peers, but because it has proven itself as the best vehicle for attaining justice. We surrender to no clamor when we protect trial by jury; we simply accept the wisdom of the ages and benefit from the experience of thousands of judges over hundreds of years who continue to marvel at the consistent soundness of jury verdicts.

### III

The Appellate Division correctly decided the remaining issues. We are satisfied, as was the Appellate Division, that the trial was fair and that the jury was not biased against defendant because of the theory or facts of his defense. During the jury *voir dire,* the trial court allowed frank inquiry of the potential jurors about their attitudes towards the insanity defense in the circumstances of this case. *See State v. Moore,* 122 *N.J.* 420, 585 *A.*2d 864 (1991) (use of questionnaires will help to elicit jury predispositions). The jury deliberated for six

days. It asked that the insanity defense be redefined and it twice had portions of the defense psychiatrist's testimony read back to it. Even though that testimony was essentially uncontroverted, the jury was not bound to accept it. The jury's verdict was thus not against the weight of the evidence. The sentence of thirty years without parole was required for murder under *N.J.S.A.* 2C:11–3 and does not constitute a cruel and unusual imprisonment disproportionate to the offense of murder. *State v. [Nathaniel] Johnson,* 206 *N.J.Super.* 341, 502 *A.*2d 1149 (App.Div.1985), *certif. denied,* 104 *N.J.* 382, 517 *A.*2d 390 (1986).

The judgment of the Appellate Division is affirmed.

HANDLER, J., dissenting.

The defendant is a homosexual suffering from a serious psychosis, a symptom of which was a sexual fantasy in which he would stab or strangle a man and then sodomize the corpse. Tragically, defendant attempted to act out his psychotic fantasy. He was driving to work one morning when he saw a young man sunbathing. Defendant stopped his car, approached the man, and after a brief exchange of words, stabbed him in the chest. However, the victim, a physician, managed to escape to his car and drive himself to the hospital, where he died of a stab wound to the heart.

Defendant was charged with intentional murder, unlawful possession of a knife, and possession of a knife for an unlawful purpose. Prior to trial, defendant moved to waive trial by jury pursuant to court rule. In support of his motion, he contended that a jury might be biased against him because of his homosexuality and prejudiced against accepting a psychiatric defense based on a bizarre psychotic disorder. The trial court denied defendant's motion, stating that "this is the kind of case that is appropriate to have the community decide" and that "a more elaborate type of *voir dire* " would address defendant's concerns.

The prosecution proceeded with a jury, which, disbelieving defendant's psychiatric defense, returned a verdict of guilty on each charge. The court sentenced defendant to the mandatory minimum term of thirty years without possibility of parole. On appeal, the Appellate Division affirmed the judgment, which the Court now affirms. I disagree with the reasoning and rationale of the Court and dissent from its judgment.

I.

Waiver of jury trial in criminal causes is covered by *Rule* 1:8–1. That rule is couched in general terms that do not indicate specific factors that govern the waiver of a jury trial. It provides only: "Criminal actions required to be tried by a jury shall be so tried unless the defendant, in writing and with the approval of the court, after notice to the prosecuting attorney and his opportunity to be heard, waives a jury trial." In *State v. Belton,* 60 *N.J.* 103, 109–10, 286 *A.*2d 78 (1972), this Court upheld *Rule* 1:8–1 against a constitutional challenge to the restriction conditioning defendant's waiver of a jury trial on court approval. The Court, now, however, construes the Rule so that a defendant cannot waive a trial by jury except in the most extraordinary circumstances, which the Court neither explains nor illustrates. According to the Court, a criminal defendant may dispense with a jury if the trial court is satisfied that defendant "in good faith" seeks the waiver not "as a stratagem to procure an otherwise impermissible advantage" and does so "voluntarily, knowingly, and competently" "with advice of counsel." *Ante* at 317–318, 590 *A.*2d at 1150–1151. The Court would also require the trial court to provide "an accompanying statement of reasons" that have moved the court to grant or deny the defendant's request "in the circumstances of the case." *Ibid.* The Court does not illuminate "the reasons" that will justify the grant or denial of a request to dispense with a trial by jury. It states simply that the "gravity" of the offense is relevant, briefly lists several factors that could "tip the scale," but quickly adds that it "repose[s] the

greatest confidence in trial judges to exercise" their discretion. *Ante* at 317–318, 590 *A.*2d at 1150–1151. The Court's additional observation that "[t]he sources of principled decision-making will remain rooted in a statement of reasons that will accompany the decision," *ante* at 317, 590 *A.*2d at 1151, does not supply guidance.

The Appellate Division, in determining that defendant here was not entitled to waive a jury, relied primarily on two of its own decisions, *State v. Davidson*, 225 *N.J.Super.* 1, 541 *A.*2d 700 (App.Div.), *certif. denied*, 111 *N.J.* 594, 546 *A.*2d 518 (1988), and *State v. Fiorilla*, 226 *N.J.Super.* 81, 543 *A.*2d 958 (App. Div.1988). In *Davidson*, the court held that the defendant was not entitled to a bench trial despite what the defendant characterized as the "emotional issue" of "racial bigotry" in the case. 225 *N.J.Super.* at 7–10, 541 *A.*2d 700. In *Fiorilla*, a Medicaid fraud case decided one month after *Davidson*, the court upheld the waiver of a trial by jury, reasoning that the complexity of the issues militated in favor of a trial by the judge alone. 226 *N.J.Super.* at 84, 94, 543 *A.*2d 958.

Those decisions leave the impression that a jury may be waived in a case involving "complex" or "difficult" technical issues, but not in cases presenting "emotional" issues such as "racial bigotry." The Court appears to endorse the rationale of those decisions but, ironically, fashions a standard that is less precise than the decisions from which it draws support.

The majority discusses the Appellate Division's three-prong test for determining when a court should grant a defendant's motion to waive a jury. *Ante* at 312–315, 590 *A.*2d at 1149–1150. In *Fiorilla*, 226 *N.J.Super.* 81, 543 *A.*2d 958, the Appellate Division enumerated three relevant factors:

Approval of a jury waiver request should not be withheld unless the trial judge has determined that: (1) a defendant has not voluntarily, knowingly and competently waived his constitutional right to jury trial with advice of counsel; or that, (2) the waiver is not tendered in good faith, but as a stratagem to procure an otherwise impermissible procedural advantage; or that (3) consequential, overriding, demonstrable and articulated reasons exist to require a

jury trial, which outweigh the reasons and record provided by the defendant in support of the waiver. [226 *N.J.Super.* at 92, 543 *A.*2d 958.]

The Court rejects the third *Fiorilla* prong and replaces it with the requirement that the trial court simply state the "reasons" why a jury trial is preferable in the circumstances of the case. *Ante* at 314–315, 316–317, 590 *A.*2d at 1149–1150, 1151. The Court's holding represents a significant change. It clearly places the burden of securing a waiver on the defendant and it makes that burden an onerous one because the "reasons" that can be used to deny the waiver need not be "consequential," "overriding" or "demonstrable."

One is hard pressed to find within the Court's opinion sound or persuasive considerations that support its determination to make it so hard for a criminal defendant to obtain a trial without a jury. The majority relies heavily on federal law. *Ante* at 309–311, 590 *A.*2d at 1146–1147. I believe it misperceives and misapplies that law. The Court, focusing on *Patton v. United States*, 281 *U.S.* 276, 298, 50 *S.Ct.* 253, 258, 74 *L.Ed.* 854, 863 (1930), gives inordinate weight to Justice Sutherland's closing personal observations on the value of jury trials to extrapolate "principles that remain of enduring guidance." *Ante* at 310, 590 *A.*2d at 1147. The majority seems oblivious to *Patton*'s holding that the constitutional right to a trial by jury "was meant to confer a right upon the accused which he may forgo at his election," that "the right of trial by jury [is] primarily for the protection of the accused," and that the framers did not intend to establish the jury in criminal trials as an "integral and inseparable part of the court." 281 *U.S.* at 297–98, 50 *S.Ct.* at 257–58, 74 *L.Ed.* at 862–63. *Ante* at 310, 590 *A.*2d at 1147.[1]

---

[1]During the earlier part of the century, most American jurisdictions were reluctant to allow a defendant in a criminal proceeding to waive his right to trial by jury. 2 LaFave & Israel, *Criminal Procedure* § 21.2(h), at 702–3 (1984). However, following the United States Supreme Court's decision in *Patton v. United States, supra,* 281 *U.S.* 276, 50 *S.Ct.* 253, 74 *L.Ed.* 854, holding that waiver of one's right to a jury was permissible in a federal criminal trial, states

The Court also cites *Singer v. United States*, 380 *U.S.* 24, 85 *S.Ct.* 783, 13 *L.Ed.*2d 630 (1965), in which the Supreme Court rejected a challenge to the federal rule, *Fed.R.Crim.P.* 23(a), which requires the consent of the prosecution and the approval of the Court before a defendant can waive a jury. *Ante* at 311–312, 590 *A.*2d at 1147. The Supreme Court upheld the constitutionality of the rule's requirement of prosecutorial consent, stating that while the sixth amendment guarantees a right to trial by jury, "there is no federally recognized right to a criminal trial before a judge sitting alone...." But the Court added:

> We need not determine in this case whether there might be some circumstances where a defendants' reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial. Petitioner argues that there might arise situations where "passion, prejudice ... public feeling" or some other factor may render impossible or unlikely an impartial trial by jury. However, since petitioner gave no reason for wanting to forego jury trial other than to save time, this is not such a case, and petitioner does not claim that it is. [380 *U.S.* at 34, 37–38, 85 *S.Ct.* at 789, 791, 13 *L.Ed.*2d at 637, 639.]

Seizing on that language, on at least two occasions federal district courts have granted a defendant's motion to waive jury trial without the consent of the prosecution. *E.g., United States v. Braunstein*, 474 *F.Supp.* 1, 13–14 (D.N.J.1978) (in complex medicare fraud cause with numerous witness, voluminous exhibits, and five separate defendants, the risk of prejudice posed by a jury trial "is extremely high and compelling"); *United States v. Panteleakis*, 422 *F.Supp.* 247, 250 (D.R.I. 1976) (complex medicare fraud case "is the kind of case where 'the practical and human limitations of [a] jury ... cannot be ignored.'" (*quoting Bruton v. United States*, 391 *U.S.* 123, 135, 88 *S.Ct.* 1620, 1627, 20 *L.Ed.*2d 476, 485 (1968)).

The approaches of the various states are so diverse they provide no clear direction. *See* Annotation, "Right of Accused, in State Criminal Trial, To Insist, Over Prosecutor's or Court's

---

generally liberalized their rules to permit criminal defendants to waive trial by jury.

Objection, on Trial By Court Without Jury," 37 *A.L.R.*4th 304 (1985). Some states require that a defendant's motion to waive jury trial be granted if the waiver is made knowingly and intelligently and for more than merely tactical reasons. *E.g.,* *State v. Duchin,* 12 *N.Y.*2d 351, 239 *N.Y.S.*2d 670, 190 *N.E.*2d 17 (1963). Other states give the trial judge broad discretion in determining whether to grant a defendant's motion to waive a jury. *E.g., State v. Bleyl,* 435 *A.*2d 1349, 1366–67 (Me.1981); *Commonwealth v. Collins,* 11 *Mass.App.Ct.* 126, 139–41, 414 *N.E.*2d 1008, 1016 (1981). Still other jurisdictions require approval of both the judge and the prosecution. *E.g., Cal. Const.* art. 1, § 16; *Mich.R.Crim.P.* 6.401. Ten states, including New Jersey, provide either by constitutional provision, statute, or court rule that a criminal defendant may waive trial by jury with consent of the trial court. *E.g., Mass.R.Crim.Pro.* 19(a); *N.Y. Const.* art. 1, § 2; *Penn.R.Crim.P.* 1101. Several states, while providing by statute or case law that a criminal defendant may waive a jury trial, do not make clear the circumstances under which a request for waiver is to be granted or denied. *E.g., Kerr v. State,* 738 *P.*2d 1370 (Okla.Crim.App.1987); *State v. Black,* 551 *P.*2d 518 (Utah 1976). The supreme courts of two states have held that a criminal defendant may never waive trial by jury in a felony case. *State v. Scalise,* 131 *Mont.* 238, 309 *P.*2d 1010 (1957); *State v. Underwood,* 283 *N.C.* 154, 195 *S.E.*2d 489 (1973). Several states, the statutes of which do not explicitly condition waiver on the consent of the court or prosecutor, have interpreted those statutes to give criminal defendants an absolute right to waive a jury trial (provided the waiver is knowing and intelligent). *E.g., Garcia v. People,* 200 *Colo.* 413, 615 *P.*2d 698 (1980); *State v. Lawrence,* 344 *N.W.*2d 227, 229 (Iowa 1984).

Most of the states that, like New Jersey, condition a defendant's waiver of a jury trial on consent of the trial court, give the trial courts wide latitude in determining whether to accept a defendant's request for waiver. *E.g., State v. Linder,* 304 *N.W.*2d 902, 904–05 (Minn.1981) ("The burden is upon defendant

to show that refusal of the waiver was so unreasonable as to constitute an abuse of discretion."); *State v. Goree*, 762 *S.W.*2d 20, 22 (Mo.1988) (en banc) ("By the unambiguous language of the constitution, the right is conditioned upon the assent of the court. Failure to sustain a motion to waive a jury trial is not an abuse of discretion.").

The Court's reasons in support of a rule that drastically curtails the ability of a criminal defendant to waive a jury are not persuasive. The Court, having confirmed the absence of a federal constitutional right to waive a jury finds no corresponding entitlement under the New Jersey Constitution to waive a jury: "[N]othing in New Jersey's history or tradition suggests any implied correlative right on the part of a defendant to demand trial by a judge and not by jury." *Ante* at 312, 590 *A.*2d at 1148. It may be that there is no federal or state constitutional right to a bench trial; it does not ineluctably follow that a criminal defendant has no protectable interest in or entitlement to the waiver of a jury.

Under the sixth amendment of the United States Constitution, trial by jury is a right specifically bestowed upon "the accused." Under our state constitution, trial by jury is provided for in article I, which enumerates the "Rights and Privileges" of citizens. Paragraph 10, entitled "Rights of *persons accused of crime*," specifies trial by jury as a right belonging to the "*accused.*" (Emphasis added.) The language of article I, paragraph 10 is virtually identical to its predecessor provision in the New Jersey Constitution of 1844. *N.J. Const. of 1844* art. I, para. 8. Our rules governing criminal practice, which reflect developing concepts of due process, recognize that the right to the waiver of "trial by jury" is one of many rights of which a defendant charged with an indictable offense must be specifically informed by the committing judge following arrest and the filing of a complaint. *R.* 3:4–2. As the United States Supreme Court concluded in *Patton, supra*, the constitutional standard, which undergirds trial by jury, "was meant to confer a right upon the accused which he may forego upon his election.

To deny his power to do so is to convert a privilege into an imperative requirement." 281 *U.S.* at 298, 50 *S.Ct.* at 258, 74 *L.Ed.* at 863.

A few states share the understanding that the defendant's right to waive trial by jury is protectable. In *People v. Duchin*, the New York Court of Appeals addressed the provision of the state constitution, which states that a criminal defendant can waive a jury trial " 'with the approval of a judge or justice of a court having jurisdiction to try the offense.' " 12 *N.Y.2d* at 353 n. 1, 239 *N.Y.S.2d* at 671 n. 1, 190 *N.E.2d* at 17 n. 1 (quoting *N.Y. Const.* art. 1, § 2). The court stated that "[t]he provision is designed for the benefit of the defendant" and accordingly held that the defendant

> is entitled to [a waiver of a jury trial] as a matter of right once it appears to the satisfaction of the court having jurisdiction that, first, the waiver is tendered in good faith and is not a stratagem to procure an otherwise impermissible procedural advantage—such as for instance, a separate trial on an indictment involving several defendants jointly charged with the commission of crime— and, second, that the defendant is fully aware of the consequences of the choice he is making. [*Id.* at 353, 239 *N.Y.S.2d* at 671, 190 *N.E.2d* at 17–18 (citations omitted).]

In *Commonwealth v. Wharton*, 495 *Pa.* 581, 435 *A.2d* 158 (1981), an equally divided Pennsylvania Supreme Court affirmed the striking down by a lower court of a legislative effort to grant the Commonwealth an absolute right to a jury trial on demand. In his opinion in support of affirmance, Justice Roberts wrote "that trial by jury in criminal cases is a procedure designed for protection of the accused," 495 *Pa.* at 589, 435 *A.2d* at 162, and quoted the United States Supreme Court in *Adams v. United States ex rel McMann*, 317 *U.S.* 269, 279–80, 63 *S.Ct.* 236, 241–42, 87 *L.Ed.* 268, 275 (1942): "What were contrived as protections for the accused should not be turned into fetters. . . . To deny an accused a choice of procedure . . . is to impair the worth of great Constitutional safeguards by treating them as empty verbalisms." *Id.* 495 *Pa.* at 598, 435 *A.2d* at 167.

The Illinois Supreme Court more than one-half century ago, in *People v. Scornavache*, 347 *Ill.* 403, 179 *N.E.* 909 (1931), believed that "[t]here is, of course, nothing in the Constitution conferring the right of jury trial on the state." The court nevertheless affirmed the judgment, including a ruling that defendant was not entitled to waive a jury. It expressed the view: (1) that trial by jury has for centuries been the established mode of trial in criminal cases; (2) that "[t]he maintenance of a jury as a fact-finding body occupies that place in government, as we know it in America, which, in the absence of a statute so providing, requires that such trial be not set aside merely on the choice of the accused"; (3) that "[t]he long recognition by courts everywhere that trial in a criminal case means a jury trial has clearly given to the people the right to object to a trial by the court on waiver of a jury trial by the accused." *Id.* at 415–16, 179 *N.E.* at 913–14. Justice DeYoung strongly disagreed:

[N]o attempt is made to sustain the announced construction of the Constitution by recourse to any of its provisions or even an implication arising therefrom. Indeed, it is conceded in the opinion that a jury trial is not an integral and inseparable part of the court, but rather an instrumentality, which may or may not be employed; that the Constitution does not confer upon the state the right to a trial in a criminal case; that the right to such a trial guaranteed by the Constitution is preserved as a right of the person accused, and that he may waive the right. These concessions, it seems to me, are fatal to the conclusion of the opinion. [*Id.* at 417–18, 179 *N.E.* at 914 (DeYoung, J., dissenting).]

Significantly, in 1941, the Illinois legislature, apparently in response to *Scornavache*, enacted a statute providing that in any case where the defendant pleads guilty or waives a jury, the case shall be heard and determined by the court without a jury. Interpreting that statute, the supreme court in *People v. Spegal*, 5 *Ill.*2d 211, 125 *N.E.*2d 468 (1955), relying on Justice DeYoung's dissenting opinion, expressly overruled *Scornavache*, and held that the lower court had erred in refusing the defendant's motion to waive a jury trial. *Id.* 5 *Ill.*2d at 217–22, 125 *N.E.*2d at 470–73.

In *People ex rel. Daley v. Joyce*, 126 *Ill.*2d 209, 127 *Ill.Dec.* 791, 533 *N.E.*2d 873 (1988), the court struck down a statute that

required the government's consent for a defendant to waive a jury trial in certain narcotics prosecutions. The court held that the state constitution "encompasse[s] the right of an accused to waive trial by jury," *id.* at 222, 127 *Ill.Dec.* at 797, 533 *N.E.*2d at 879, in contrast to the federal constitution, which characterizes the right to trial by jury as a right belonging to the accused only in the sixth amendment but not in article III, section 2 ("The trial of all Crimes, except in Cases of Impeachment, shall be by jury."). *Id.* at 214, 127 *Ill.Dec.* at 793, 533 *N.E.*2d at 875. The court determined therefore that the Supreme Court's decision in *Singer v. United States, supra,* 380 *U.S.* 24, 85 *S.Ct.* 783, 13 *L.Ed.*2d 630, was not helpful in deciding the issue before it. *Id.* 126 *Ill.*2d at 214–15, 127 *Ill.Dec.* at 793, 533 *N.E.*2d at 875; *see also People v. Reed,* 23 *Ill.App.*3d 546, 547, 319 *N.E.*2d 557, 558 (1974) (*Singer* is not dispositive in interpreting Illinois's waiver statute, as the statute does not require consent of the government whereas the federal statute at issue in *Singer* did). By contrast, the Illinois Constitution always refers to the right to trial by jury as specifically belonging to the accused.

Given that trial by jury is a right belonging to the defendant, the burden of the argument would seem to be on the proponents of limiting a defendant's ability to waive that right. Most of the arguments in favor of curtailing a defendant's ability to waive a jury trial, such as "community expectations," "equal treatment of prosecution and defendant," and "preservation of the role of the jury," are imprecise and insubstantial. Such reasons for limiting a defendant's ability to waive a jury are, in the words of the Supreme Court in *Patton,* "of vague and variable quality." 281 *U.S.* at 306, 50 *S.Ct.* at 261, 74 *L.Ed.* at 867.

The argument that both the state and the defendant are parties to a trial, so that each should be given an equal voice concerning the method of trial, is sometimes advanced to inhibit a defendant's ability to waive a jury. *E.g., State v. Taylor,* 391 *S.W.*2d 835, 836 (Mo.1965) (in considering whether to waive a

jury trial the trial court must consider "that the rights of society, as well as the rights and privileges of the accused, are involved"); *see* 3 ABA Standards for Criminal Justice 15–1.2 (2d ed. 1980) (3 ABA Standards) ("Both sides are treated equally or nearly equally on related matters in many jurisdictions—for example, challenges for cause and peremptory challenges—and thus it may be contended that the defendant alone should not control the method of trial.") Of course, in most respects, the prosecution and defense are not treated equally, nor should they be. Trial by jury, unlike challenges for cause and peremptory challenges, is a constitutional right belonging to the accused and not the prosecution. This is evidenced by the amendment of our own jury-waiver rule, *Rule* 1:8–1, in 1969, which eliminated the requirement that the prosecution consent to defendant's waiver of a jury trial. See Pressler, Current N.J. Court Rules, Comment R. 1:8–1. Interestingly, the lesson to be derived from that amendment can be gleaned in part from an Iowa Supreme Court decision, *State v. Henderson,* 287 *N.W.*2d 583, 584 (1980). There the court held that its waiver statute for felony cases gives a defendant an absolute right to waive a jury and be tried by the court. The court so held partly on the basis of statutory construction. *See id.* at 586. The court also noted that the original draft considered in the legislature required the consent of the court and prosecutor, but that that requirement was subsequently struck, so that the statute conformed with Iowa's rule permitting waiver of jury trial in misdemeanor cases. The court stated:

> In eliminating the provision requiring consent of the court and prosecutor and in conforming the rule to the statute permitting a defendant to insist on a nonjury trial of a misdemeanor charge, the legislature manifested an intention to give defendants the unilateral right to waive a jury and be tried by the court. [*Ibid.*]

It is reasonable to infer that in amending our own rule to eliminate prosecutorial consent to waiver, the dominant intent was to strengthen defendant's right to waiver and to assure the protections of the defendant in the exercise of that right through court approval.

An acceptable basis for refusing to waive a jury may involve situations in which the judge is biased, or, as in *State v. Radziwil*, 235 *N.J.Super.* 557, 563 *A.*2d 856 (App.Div.1989), *aff'd*, 121 *N.J.* 527, 582 *A.*2d 1003 (1990), in which the judge may find it "difficult . . . to remove inadmissible evidence from his mind, if he were the fact finder." *Id.* 235 *N.J.Super.* at 571, 563 *A.*2d 856. In *Radziwil*, the Appellate Division affirmed the trial court's denial of a defendant's motion under *Rule* 1:8–1. The trial court "felt that if he excluded evidence as a result of the hearings, it would be difficult for him to remove inadmissible evidence from his mind, if he were the fact finder." 235 *N.J.Super.* at 571, 563 *A.*2d 856. In addition, "the judge was concerned that the appearance of [ ] fairness might be blemished if he made a ruling that certain evidence was inadmissible and then made a finding of fact that seemed contradictory to that ruling." *Ibid.; accord Commonwealth v. Collins, supra,* 11 *Mass.App.Ct.* at 139–41, 414 *N.E.*2d at 1016; *Commonwealth v. Sorrell,* 500 *Pa.* 355, 361–62, 456 *A.*2d 1326, 1329 (1983). Of course, the solution here may be simply to transfer the case to a judge who feels better able to discharge his or her duties. See 3 ABA Standards 15–1.2.

Many courts that impose restrictive conditions on the defendant's privilege to waive a jury believe simply that there is a strong preference for a trial by jury. Community or public "expectations" are frequently invoked to deny a defendant the right to proceed to trial without a jury. The Court in this case appears to embrace that philosophy. *Ante* at 315–316, 319–320, 590 *A.*2d at 1149–1150, 1151–1152. That viewpoint is illustrated by *State v. Thompson,* 88 *Wash.*2d 13, 558 *P.*2d 202, *appeal dismissed sub nom. Thompson v. Washington,* 434 *U.S.* 898, 98 *S.Ct.* 290, 54 *L.Ed.*2d 185 (1977). There, the Supreme Court of Washington, construing a waiver statute that the required the consent of the trial court held that the trial court had not abused its discretion in giving the following reasons for denying a defendant's waiver motion: "[T]he seriousness of the crime charged; a jury would prevent the appear-

ance of impropriety, lack of fairness or injustice; the verdict should represent the thinking of the community as represented by 12 jurors; and a jury would free the court from having to weigh the evidence." *Id.* 88 *Wash.*2d at 15, 558 *P.*2d at 204.

The Court here expresses the same strong preference for a jury determination, relying heavily on the notion that public acceptability attends only a verdict by a jury in a criminal case. *Ante* at 315–316, 590 *A.*2d at 1149–1150. The reason set forth by the trial judge in this case was that a jury verdict was a "community" determination. The reason given by the trial court in *State v. Fiorilla* for denying the defendants' motions for jury waiver was that "when you go in to try a case such as this, the public and society expects [sic] there will be a fair and impartial trial by a jury of peers." 226 *N.J.Super.* at 85, 543 *A.*2d 958. See also 3 ABA Standards, 15–1.2 ("if a jury is used, the community will be more likely to accept the result and much less likely to criticize the court").

In a similar vein, it is often contended that "[t]he jury has been and still is the most trusted method of determining guilt or innocence." 3 ABA Standards 15–1.2. See *Patton v. United States, supra,* 281 *U.S.* at 312, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870; *Singer v. United States, supra,* 380 *U.S.* at 35, 85 *S.Ct.* at 790, 13 *L.Ed.*2d at 638; *State v. Davidson, supra,* 225 *N.J.Super.* at 9, 541 *A.*2d 700; *Commonwealth v. Wharton, supra,* 495 *Pa.* at 606–07, 435 *A.*2d at 171 (opinion of Larsen and Kaufman, JJ.). However, usually no evidence is offered to justify that conclusion or to support such a policy. Justice Otis, dissenting in *State v. Linder, supra,* complained that in denying waiver "the court assigned as its reason, without further explication, only a 'preference' to have a jury decide that issue." 304 *N.W.*2d at 908. Moreover, the Supreme Court in *Patton* noted that the argument that public policy requires a jury trial is fallacious, observing that a defendant may plead guilty and thus dispense with trial altogether. 281 *U.S.* at 305, 50 *S.Ct.* at 260, 74 *L.Ed.* at 866.

Public expectations are often at odds with the procedural protections accorded criminal defendants. The community's criticism or disapproval, like the community's expectations, should not be used as a gauge for determining the protections available to criminal defendants. The Court, while claiming "never to fear public clamor over any decision," *ante* at 316, 590 *A*.2d at 1150 (citing *Craig v. Harney*, 331 *U.S.* 367, 376, 67 *S.Ct.* 1249, 1255, 91 *L.Ed.* 1546, 1552 (1947)), again and again refers to the need for "public confidence." *Ante* at 315–316, 319–320, 590 *A*.2d at 1149–1150, 1151–1152. The Court quotes the following language from *In re Edward S.*, 118 *N.J.* 118, 148, 570 *A*.2d 917 (1990): "There is probably no determination that causes more concern and doubt in the minds of the public about the fair and sound operation of our criminal laws than a *jury* verdict of not guilty by reason of insanity in a murder case." (Emphasis added). *Ante* at 316, 590 *A*.2d at 1150. It difficult to fathom the Court's conclusion with respect to "public confidence" from this ambiguous reference. The implication is that if the public does not like such verdicts from juries, they will react even more negatively when the verdicts come from judges.

Constitutional rights, however, are meant to protect the accused, not to promote relations between the judiciary and the public. "It would be ironic indeed if widespread public clamor for jury trial were routinely to serve as the principal basis for denial of its waiver by defendants who sense the same clamor, and wish to rely on the objectivity of an appointed jurist." *State v. Fiorilla, supra*, 226 *N.J.Super.* at 93–94, 543 *A*.2d 958. *See also Commonwealth v. Wharton, supra*, 495 *Pa.* at 600, 435 *A*.2d at 167 (Roberts, J., opinion in support of affirmance) ("[T]here may be cases, such as those involving widespread publicity adverse to the accused, in which trial before a judge will be perceived as potentially more fair than a jury trial.").

The trial court, glossing over the genuine complexity of the issues posed by this case, concluded that a jury would have no special difficulties with respect to assessing defendant's crimi-

nal culpability in light of his homosexuality and psychotic delusions. It assumed that the matter—a bizarre murder or a murder committed by a bizarre defendant—is somehow intrinsically a preferred case for a jury. That view, endorsed by the Court, is based on the untested assumption that certain kinds of cases are best left to a jury. *Cf.* 3 ABA Standards 15–1.2 (there may be cases, for example, "where demeanor and veracity of witnesses are involved" that are better decided by "[t]welve average persons, representing a cross-section of society," than by a judge alone). The clear implication is that in this kind of case a criminal verdict by a trial judge would not be trustworthy, that a judge's adjudication of crime would lack the integrity or cogency of a verdict rendered by a jury. I strongly disagree.

This Court itself has recognized the public's skepticism toward the insanity defense, noting that "it is well established that many laypersons have a great deal of difficulty in understanding the insanity defense, and many people might not be able to consider it as a viable defense." *State v. Moore*, 122 *N.J.* 420, 453–54, 585 *A.*2d 864 (1991). See Hans, "An Analysis of Public Attitudes Toward the Insanity Defense," 24 *Criminology* 393 (1986) (89.2% of those polled believed that the insanity defense allowed guilty persons to go free). Justice Otis, dissenting in *State v. Linder*, put the matter right: "[T]he fact that mental illness was not only a crucial issue, but for practical purposes the only issue, was a compelling reason why the court should have honored the request to waive a jury." 304 *N.W.*2d at 908. "This is precisely the kind of case," according to Justice Otis, "where judges should do their duty 'unswayed by partisan interests, public clamor, or fear of criticisms' as the judicial canons require, absent 'substantial reasons why the defendant should not be allowed to waive a jury trial.'" *Ibid.* (quoting *State v. Kilburn*, 304 *Minn.* 217, 227, 231 *N.W.*2d 61, 66 (1975) (MacLaughlin, J., concurring) (footnote omitted)). Justice Otis further explained:

> What constitutes "mental illness" as a defense in a criminal case is one of the most complex, difficult, and troublesome questions of law and fact which the legislature and the courts must confront. The bench and bar have for years been struggling with the problem of defining a comprehensible and rational rule for the guidance of factfinders in such cases. Determining the criminal responsibility of psychopathic offenders often draws on the experience and training of the medical profession, the legal profession, sociologists, and theologians. It is an inexact science to say the least. To expect twelve laypersons, without any particular exposure to these disciplines to better understand, weigh, and assess conflicting testimony of so-called experts is to blind ourselves to reality. While members of the judiciary profess no prescience or infallibility in these fields, it is only reasonable to assume that trial judges by education and experience are more likely to have an understanding and grasp of what is relevant than do laypersons. [*Ibid.*]

To say that only a jury's verdict in certain kinds of cases will be accepted by the public may express an opinion-polling truism; it does not describe a legal precept that can be reconciled with due process and fundamental fairness. In *State v. Kilburn, supra,* the Minnesota Supreme Court addressed the issue of whether a trial court incorrectly denied a defendant's motion to waive a jury trial. The defendant in *Kilburn* was a black man accused of killing a fifteen-year-old white girl during a sexual encounter. The defendant, arguing that the circumstances of the crime were incendiary, that there were few blacks in the county, and that there was considerable pretrial publicity, moved for a bench trial and a change of venue. The trial court denied both motions. *Id.* 304 *Minn.* at 221–22, 231 *N.W.*2d at 63–64. The supreme court upheld the trial court, stating that "[t]here was no showing of pretrial publicity or prejudice...." *Id.* at 225, 231 *N.W.*2d at 65.

Justice Otis in dissent noted that "[t]he killing of a 15–year–old white girl by an adult black in the course of a sexual encounter is the most inflammatory and volatile set of circumstances imaginable." *Id.* at 232, 231 *N.W.*2d at 69. He noted further that neither the Minnesota Constitution nor Minnesota's waiver statute "attaches any conditions to the defendant's right to waive a jury." *Id.* at 234, 231 *N.W.*2d at 70. Justice Otis reasoned that waiving a jury

is a fundamental decision which only the defendant after consulting with counsel should be permitted to make since it bears directly on the right to an impartial hearing. Had the trial court advanced some compelling reason for refusing to try the case without a jury, the questions presented might be more difficult. [*Id.* at 228, 231 *N.W.*2d at 67.]

There is no reason why a judge's determination cannot be rendered in a way that is understandable and acceptable to the public. There are several rules that require judges to set forth their findings in a bench trial. *Rule* 1:7–4 (Findings by the Court in Non–Jury Trials) provides in part: "In criminal, quasi-criminal and juvenile actions tried without a jury, the court shall make a general finding and shall, in addition, on request find the facts specifically." The judicial responsibility to explain is readily understood and accepted in a variety of contexts. *E.g., State v. Roth,* 95 *N.J.* 334, 366–67, 471 *A.*2d 370 (1984) (sentencing); *State in the Interest of C.A.H.,* 89 *N.J.* 326, 446 *A.*2d 93 (1982) (court can assess psychiatric and psychological evidence in juvenile waiver hearing); *see State v. Jarbath,* 114 *N.J.* 394, 414, 555 *A.*2d 559 (1989) (sentencing). *Rule* 3:29 provides: "The court shall place on the record the reasons supporting its decision on a motion to dismiss an indictment, accusation or complaint, or on an application for diversion, change or reduction of sentence, or other disposition of a criminal matter." The "disposition of a criminal matter" under that rule would seem to require that a court set forth its reasons for an acquittal or judgment of guilt of a lesser-included offense.

## II.

While I am reluctant to challenge what the majority believes to be "the wisdom of the ages" and "the experience of thousands of judges over hundreds of years," *ante* at 319, 590 *A.*2d at 1151–1152, I am compelled to state what to me is obvious: there is no overriding public, legislative, or judicial policy that invests *a priori* greater integrity or intrinsic worth in a jury verdict in criminal prosecutions involving controversial issues and serious charges than can be invested in a verdict reached

by a judge. Indeed, under our current criminal jurisprudence there is perhaps no more important, delicate, and sensitive decisional responsibility than that invoked in capital-murder prosecutions, that is, whether a guilty defendant deserves to die for the crime. Yet, lest there be any doubt on the part of judges, the Legislature expressly permits a capital defendant to waive sentencing by a jury. *N.J.S.A.* 2C:11–3c(1). Our Court itself has recognized that a judge is fully competent to exercise that awesome decisional responsibility, and that the ultimate sentence, be it death or life, is one that society can be expected to accept. *E.g., State v. Di Frisco,* 118 *N.J.* 253, 571 *A.*2d 914 (1990).

In rejecting and replacing the third-prong of the *Fiorilla* test, the Court finds that "neither the Constitution nor the Rules of Court tilt in favor of a non-jury trial"; it contents itself with a new standard that leaves the court's discretion totally unfettered and unguided. *Ante* at 314–315, 316–317, 590 *A.*2d at 1149, 1150–1151 (citing *Fiorilla, supra,* 226 *N.J.Super.* at 92, 543 *A.*2d 958). However, it is also fair to point out that neither the Constitution nor the Rules "tilts" toward forcing defendants to undergo a jury trial against their will. Given that trial by jury is a right "primarily for the protection of the accused," *Patton, supra,* 281 *U.S.* at 297, 50 *S.Ct.* at 257, 74 *L.Ed.* at 862, and absent a legislative choice to the contrary, the burden should be on the court to articulate reasons why a defendant should be denied waiver of a jury trial. Under both the United States and the New Jersey Constitutions, trial by jury is a right belonging specifically to the defendant in a criminal trial. Thus, the defendant should, in most circumstances, be permitted to waive a jury trial.

In my opinion, this Court should adopt a modified version of the *Fiorilla* test. The first two factors should remain the same. A defendant's request to waive a jury trial should not be denied unless the trial judge has determined that (1) a defendant had not voluntarily, knowingly and competently waived his constitutional right to jury trial with advice of counsel; or that,

(2) the waiver is not tendered in good faith, but as a strategem to procure an otherwise impermissible procedural advantage. *Fiorilla, supra,* 226 *N.J.Super.* at 92, 543 *A.*2d 958. The third factor should be narrowed so that the trial judge can deny the defendant's waiver motion only, in addition to the other two factors, if there are articulable reasons why, in the context of the case and the surrounding circumstances, a jury is inherently better able to hear the case than a judge, and those reasons outweigh the defendant's reasons for waiving a jury trial. To make it more difficult for a defendant to waive the right to a jury would be, in the words of the Supreme Court, to turn "protections for the accused ... into fetters," *Adams v. United States ex rel. McCann, supra,* 317 *U.S.* at 279, 63 *S.Ct.* at 242, 87 *L.Ed.* at 275—precisely what the majority does today.

I dissent.

GARIBALDI, J., joins in this opinion.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, O'HERN and STEIN—5.

*Dissenting*—Justices HANDLER and GARIBALDI—2.